SANKAR v DETROIT BOARD OF EDUCATION

Docket No. 84090. Submitted November 6, 1986, at Detroit. Decided June 1, 1987.

Betty Ann Sankar filed suit against the Detroit Board of Education and others in Wayne Circuit Court alleging claims in tort for 1) negligent evaluation of her teaching performance, 2) conspiracy, and 3) intentional infliction of emotional distress. Sankar and her union had protested the unsatisfactory performance evaluation through four steps of the grievance procedures set forth in the collective bargaining agreement between the union and defendant, but did not pursue the grievance to the final step of binding arbitration. Defendants moved for summary judgment on the grounds that plaintiff had failed to exhaust her contractual remedies and that, even if the court had jurisdiction over the action, plaintiff failed to state a claim upon which relief could be granted. The court, David P. Kerwin, J., denied the motion, finding a legitimate issue of fact was present with regard to the tortious conduct alleged in the pleadings. Defendants appealed by leave granted.

The Court of Appeals *held:*

1. The actions complained of and characterized as a tort of negligent evaluation arose exclusively from a duty created under the collective bargaining agreement. Thus, plaintiff's

REFERENCES

Am Jur 2d, Conspiracy §§ 10 *et seq.*

Am Jur 2d, Fright, Shock, and Mental Disturbance § 4.

Am Jur 2d, Labor and Labor Relations §§ 1790, 1842-1844, 1932-1937.

Rights of state and municipal public employees in grievance proceedings. 46 ALR4th 912.

Modern status of intentional infliction of mental distress as independent tort; "Outrage". 38 ALR4th 998.

Liability of employer, supervisor, or manager for intentionally or recklessly causing employee emotional distress. 86 ALR3d 454.

Validity and construction of statutes or ordinances providing for arbitration of labor disputes involving public employees. 68 ALR3d 885.

Exhaustion of grievance procedures or of remedies provided in collective bargaining agreement as condition of employee's resort to civil courts for assertedly wrongful discharge. 72 ALR2d 1439.

negligent evaluation claim is contractual and not tortious. Because the gist of plaintiff's first claim is breach of contract, and because plaintiff admits that she failed to exhaust her contractual grievance procedures by pursuing her grievance to binding arbitration, summary disposition for failure to exhaust the grievance and arbitration procedures is appropriate.

2. Plaintiff's pleadings stated mere conclusions that fail to offer direct or circumstantial evidence of an unlawful agreement between the alleged conspirators. The facts do not show, either directly or circumstantially, that there was any agreement between defendants to have plaintiff transferred or demoted. The trial court should have dismissed the civil conspiracy charge against defendants.

3. The trial court also should have granted defendants' summary disposition motion on plaintiff's intentional infliction of emotional distress claim. Plaintiff failed to allege any conduct which would constitute this tort.

Reversed.

1. LABOR RELATIONS — BREACH OF COLLECTIVE BARGAINING AGREEMENTS — GRIEVANCE PROCEDURES.

The failure of an employer to perform a duty imposed by a collective bargaining agreement is a breach of contract, not a tort, and where the collective bargaining agreement provides grievance and arbitration procedures for such breaches of contract, no legal action can be commenced until those procedures have been exhausted.

2. PLEADING — SUMMARY JUDGMENT — CONSPIRACY — BAD FAITH.

A mere assertion that a group of defendants acted in bad faith to the detriment of the plaintiff does not preclude summary judgment dismissing conspiracy claims as a matter of law.

3. TORTS — INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

A cause of action for intentional infliction of emotional distress will not lie where the defendant's conduct, even though unreasonable or in bad faith, was not tortiously outrageous.

4. TORTS — INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

A person is not liable for intentional infliction of emotional distress where he has done no more than insist upon his legal rights in a permissible way, even if the actor is aware that such insistence upon his legal rights is certain to cause emotional distress.

*Sommers, Schwartz, Silver & Schwartz, P.C.* (by *Joseph A. Golden*), for plaintiff.

*Gordon J. Anderson,* Detroit Board of Education, and *Riley & Roumell* (by *George T. Roumell, Jr.,* and *Daniel J. Bretz*), for defendants.

Before: Hood, P.J., and T. M. Burns and J. X. Theiler,* JJ.

Per Curiam. Defendants appeal by leave granted from a March 13, 1985, circuit court order which denied their motion for summary judgment pursuant to former GCR 1963, 117.2(1), now MCR 2.116(C)(8). Plaintiff was employed as a schoolteacher for Detroit Public Schools from 1960 until October 13, 1981, when she went on leave of absence. She later retired on June 1, 1983. On April 13, 1981, defendants gave plaintiff an unsatisfactory job performance evaluation which required, according to the terms of the collective bargaining agreement, that she be transferred to another school where she would have two semesters to improve her performance. Plaintiff and her union, the Detroit Federation of Teachers, protested the unsatisfactory performance evaluation through the collective bargaining agreement grievance procedures and pursued the grievance to "Step Four" of the procedure, but did not pursue the grievance to the final step of binding arbitration.

Plaintiff then filed suit in the circuit court against the Detroit Board of Education and others alleging three claims in tort for: (1) negligent evaluation; (2) conspiracy; and (3) intentional infliction of emotional distress. These claims all arise out of an alleged breach of the collective bargaining agreement. Defendants claimed below and again argue in this appeal that plaintiff's claims are based upon and are exclusively remediable

---

* Circuit judge, sitting on the Court of Appeals by assignment.

under the collective bargaining agreement and that plaintiff is precluded from seeking relief in the circuit court because she failed to exhaust her remedies to the final step of binding arbitration. Defendants also urged below and on appeal that, even if the circuit court has jurisdiction to entertain plaintiff's complaint, each of the three tort claims pled are insufficient and fail to state a claim upon which relief may be granted. The trial court denied defendants' summary judgment[1] motion and found that a legitimate issue of fact was present with regard to the tortious conduct alleged in the pleadings. We disagree and reverse the decision of the lower court and grant summary disposition in favor of defendants.

The collective bargaining agreement between the school board and the DFT contains a five-step grievance procedure. Step five provides for final and binding arbitration:

STEP 5. If the Union is dissatisfied with the decision of the Board of Education, the Union may

---

[1] Defendants' summary judgment motion under GCR 117.2(1) is technically improper. A motion for accelerated judgment pursuant to former GCR 116.1(5), now MCR 2.116(C)(7), is the proper manner in which to raise the affirmative defense of failure to exhaust the grievance and arbitration procedures. In *Ceplin v Bastian-Blessing Div of Golconda Corp,* 90 Mich App 527, 530; 282 NW2d 380 (1979), this Court stated:

Failure to exhaust the grievance and arbitration procedure is an affirmative defense which should have been raised by way of accelerated, not summary, judgment. GCR 1963, 116.1(5), *Pompey v General Motors Corp, supra,* [385 Mich 537; 189 NW2d 243 (1971)] 563, *Baker v Detroit* [73 Mich App 67; 250 NW2d 543 (1976)]. The purpose of the accelerated judgment motion is to test certain special defenses which may make trial on the merits unnecessary, even though factual issues may have to be resolved in order to rule upon the motion. 1 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), p 336. [See also *Smith v Metropolitan Life Ins Co,* 107 Mich App 447; 309 NW2d 550 (1981).]

within twenty school days submit any grievance under this Agreement to final and binding arbitration under the labor arbitration rules of the American Arbitration Association, at the equal expense of the parties. The Union shall have exclusive authority in its discretion as to whether to appeal any grievance to arbitration.

However, step five also says that the grievance procedures are not the exclusive remedy for an aggrieved teacher:

F. The grievance procedures provided in this Agreement shall be supplementary or cumulative to, rather than exclusive of, any procedures or remedies afforded to any teacher by law.

It is defendants' contention that the lower court erred in refusing to dismiss plaintiff's claims because they arose out of and were exclusively remediable by the collective bargaining agreement. It is true that the general rule is that an employee may not maintain an action against his employer for breach of a collective bargaining agreement unless he has exhausted his contractual grievance procedures. *Smith v Metropolitan Life Ins Co,* 107 Mich App 447; 309 NW2d 550 (1981); *Grosse Pointe Farms Police Officers Ass'n v MERC Chairman,* 53 Mich App 173; 218 NW2d 801 (1974), lv den 392 Mich 783 (1974). However, this Court has recognized exceptions to this general rule where a plaintiff is seeking remedies not created under the labor contract or where an employee's efforts to proceed with contractual remedies would be futile.

In *Smith, supra,* 451, this Court cited *Glover v St Louis-S F R Co,* 393 US 324, 330; 89 S Ct 548; 21 L Ed 2d 519 (1969), where the United States Supreme Court found that the plaintiffs, who alleged they were denied promotions due to racial

discrimination, were not bound to exhaust contractual remedies where the complaint alleged that the union and the railroad were working together against the plaintiffs and that further efforts to pursue a contractual or administrative remedy would be futile. In *Barry v Flint Fire Dep't,* 44 Mich App 602, 606; 205 NW2d 627 (1973), where the plaintiff asserted a constitutional violation of equal protection, Judge T. M. BURNS wrote:

> It is axiomatic that an employee contesting his rights under a collective bargaining contract must insofar as possible exhaust the grievance procedures set forth in that contract before turning to the courts for relief. See for example *Cortez v Ford Motor Co,* 349 Mich 108 [84 NW2d 523] (1957); *Field v Local 652 UAW AFL-CIO,* 6 Mich App 140 [148 NW2d 552] (1967). The reason for the rule is both apparent and sound. A collective bargaining contract fashions certain rights between an employer and employee and also creates a method for resolving any future disputes arising out of these rights, in short, a grievance procedure. In the event of a disagreement over these particular contractually created rights, it is only reasonable and equitable that the parties settle their differences by the mutually agreed upon method specified in the labor contract before looking to the judiciary for assistance. The language and factual context of the cases in this area coupled with the foregoing rationale of the exhaustion rule, however, patently indicate that the exhaustion requirement is applicable only when an employee alleges a violation of his rights created under the labor contract.

In this case plaintiff's claims are pled as torts. If plaintiff's claims are found to state a cause of action in tort, *Barry* suggests that it would not be necessary for plaintiff to exhaust her contractual remedies prior to seeking judicial relief. However,

the defendants point to the United States Supreme Court's recent decision in *Allis-Chalmers Corp v Lueck,* 471 US 202; 105 S Ct 1904; 85 L Ed 2d 206 (1985), which holds that a state law tort claim arising from a collective bargaining agreement is preempted by the National Labor Relations Act, 29 USC 151 *et seq.* Defendants admit that the collective bargaining agreement in this case between the board and the DFT is governed by the Michigan public employment relations act, MCL 423.201 *et seq.;* MSA 17.455(1) *et seq.,* and not by the NLRA. But they further point out that Michigan courts interpreting PERA have consistently looked to federal precedent developed under the NLRA. See *Harris v Amalgamated Transit Union,* 122 Mich App 706, 709; 333 NW2d 1 (1982); *DPOA v Detroit,* 391 Mich 44, 53; 214 NW2d 803 (1974).

Whether or not we follow the federal precedent in *Allis-Chalmers,* our analysis of this case must begin with consideration of plaintiff's three claims to determine their legal sufficiency. As stated in *Nicholson v Han,* 12 Mich App 35, 43; 162 NW2d 313 (1968):

> "The authorities are uniform in holding that the nature of the action with respect to whether it is based on a breach of contract or sounds in tort must be determined by the gravamen, or essential facts or grievance as alleged, to be ascertained from a consideration of the pleading as a whole. 1 CJS, Actions, § 46, p 1100." *Williamson v Pacific Greyhound Lines* (1944), 67 Cal App 2d 250 (153 P2d 990, 992).

Thus, at the summary disposition stage, the Michigan courts will look beyond the face of a plaintiff's pleadings to determine the gravamen or gist of the cause of action contained in the complaint.

As to plaintiff's negligent evaluation claim, her

complaint alleges that defendants "negligently and in violation of the contract . . . maliciously and without just cause evaluated Plaintiff's performance as a teacher with the specific intent of causing Plaintiff's demotion and/or transfer." Plaintiff's complaint further sets forth bargaining agreement language and alleges that no conferences or discussions concerning her unsatisfactory performance had been held within the time limits prescribed in the collective bargaining agreement before her transfer. At her deposition, plaintiff testified that the gist of her complaint was that she disagreed with being rated unsatisfactory and that she was performing satisfactorily.

Plaintiff relies upon two cases which she asserts indicate that Michigan recognizes the tort of negligent evaluation of an employee. In *Schipani v Ford Motor Co,* 102 Mich App 606; 302 NW2d 307 (1981), the plaintiff sued his employer alleging breach of contract, age discrimination, malicious and bad faith demotion, impairment of prospective economic opportunity, and failure to objectively evaluate his performance. As to the last count, the plaintiff alleged that the defendant periodically reviewed his job performance and had a duty to do so "in an objective manner," which duty the employer breached, thereby denying him placement on the defendant's list which would have assured a promotion. This Court concluded that if the trial court found that the plaintiff stated a proper claim on the breach of contract count, then he stated an adequate claim for negligent evaluation. In doing so, this Court relied upon several Michigan Supreme Court cases that have stated that a common law duty to perform a contract with ordinary care accompanies every contractual relationship and a negligent performance constitutes a tort as well as a breach of contract. *Clark v Dalman,* 379 Mich

251, 261; 150 NW2d 755 (1967); *Williams v Polgar,* 391 Mich 6, 19; 215 NW2d 149 (1974); *Crews v General Motors Corp,* 400 Mich 208, 226; 253 NW2d 617 (1977) (WILLIAMS, J., for reversal).

The second case plaintiff relies upon is *Chamberlain v Bissell, Inc,* 547 F Supp 1067 (WD Mich, 1982). In *Chamberlain,* a discharged employee brought an action against his former employer, alleging that his discharge violated the Age Discrimination in Employment Act, that his discharge was without just cause, and that the employer was negligent in conducting the plaintiff's job evaluation. Applying Michigan law and citing *Hart v Ludwig,* 347 Mich 559; 79 NW2d 895 (1956), and *Clark v Dalman, supra,* as well as *Schipani v Ford Motor Co, supra,* District Court Judge Wendell Miles found that since the defendant had a contractual obligation to conduct performance reviews and since it actually undertook to conduct those reviews it followed that the defendant had a duty to use ordinary or reasonable care in performing the plaintiff's reviews. The judge then found that the defendant had breached its duty of reasonable care and concluded that the defendant's negligence was both cause in fact and proximate cause of the plaintiff's discharge.

Neither of these cases is applicable to the instant case. Unlike the situations in *Schipani* and *Chamberlain,* the conduct of the parties in this case was governed by a collective bargaining agreement. Both *Schipani* and *Chamberlain* are based upon implied contract theories that were articulated in *Toussaint v Blue Cross & Blue Shield of Michigan,* 408 Mich 579; 292 NW2d 880 (1980). Contract theories implied in *Toussaint* are inapplicable to collective bargaining agreements. In *Fifield v International Union, UAW Local 137,* 570 F Supp 562, 566 (WD Mich, 1983), the federal

court observed that *Toussaint* was not addressed to
the collective bargaining context and that to hold
otherwise would exert a disruptive influence on
both the administration and negotiation of collec-
tive bargaining agreements. Accord, *Maushund v
Earl C Smith, Inc,* 795 F2d 589 (CA 6, 1986).

At their core, the actions complained of here
and characterized as a tort of negligent evaluation[2]
arose exclusively from a duty created under the

[2] Moreover, the cases since *Schipani* and *Chamberlain* seem to
question the viability of the tort of negligent evaluation. For example,
beyond the fact that *Chamberlain* is not binding precedent upon our
Court, we note that other recent unpublished federal court decisions
applying Michigan law that were cited in defendants' brief have
declined to recognize the negligent evaluation theory where the
alleged wrong is not totally distinct from the breach of contract. See
*Payne v Weyerhauser Co,* Case No. 82-73139 (ED Mich, 1983); *Gach v
National Education Corp,* Case No. 84-1792 (ED Mich, 1985); *Mitchell
v Singer Co,* Case No. 82-73846 (ED Mich, 1985). Even Judge Miles
appears to have retreated from his position in *Chamberlain* by stating
that a "negligent evaluation claim does not arise out of every failure
of an employer to evaluate an employee." *Ellis v Kentucky Fried
Chicken National Management Co,* Case No G83-1363 CA 1 (WD
Mich, 1985).

In this Court, *Brewster v Martin Marietta Aluminum Sales, Inc,*
145 Mich App 641; 378 NW2d 558 (1985), which did not cite *Schipani,*
nonetheless seems to be in conflict with that earlier decision. In
*Brewster,* this Court affirmed the trial court's grant of the defendant's
motion for judgment notwithstanding the verdict on the plaintiff's
negligent breach of implied contract claim. Despite the plaintiff's
claim at trial that the defendants were negligent in giving her "mixed
signals" regarding her performance, in terminating her employment,
and in failing to exercise due care in investigating the plaintiff's co-
employees' complaints, this Court held that there was no breach of
duty distinct from the breach of contract and that the plaintiff's cause
of action arose from a breach of promise or the nonfeasance of a
contractual obligation.

Discussing the subtle distinctions between tort and contract obliga-
tions between the parties, Prosser & Keeton on Torts (5th ed), § 92, pp
659-662, states:

> It is suggested that to the extent that the duty a party to a
> contract owes to another party or a third party beneficiary is to
> be determined upon the basis of the first party's manifested
> intention, the obligation is contractual and entirely contrac-
> tual. This would normally be so when the claim is for economic
> loss. Such a claim should not be translatable into a tort action
> in order to escape some roadblock to recovery on a contract
> theory. If the obligation is one that cannot be disclaimed by one

collective bargaining agreement. Indeed, the *Schipani* Court quoted with approval the lower court's statement that indicated that at common law there is no duty by an employer to evaluate an employee's performance. 102 Mich App at 623. In the within case plaintiff simply cannot successfully establish her negligent evaluation claim as distinct from the collective bargaining agreement. Thus, looking past its form to the substance of plaintiff's negligent evaluation claim, it can only be held

engaged in the type of transaction involved and is imposed without reference to manifested intent, then the obligation should be regarded as tortious in character. Thus, a builder or a contractor would normally be subject to liability on a contract theory only, to the promisee and a third-party beneficiary for delays in construction or defects in construction that do not result in physical harm to persons and tangible things, other than the thing itself that is being constructed or repaired. On the other hand, it is quite possible that lawyers or accountants may be subject to tort liability as well as contract liability for economic loss suffered as a consequence of reliance by third parties on negligent misrepresentations made in the course of rendering a service pursuant to a contract.

\* \* \*

The principle which seems to have emerged from the decisions in the United States is that there will be liability in tort for misperformance of a contract whenever there would be liability for gratuitous performance without the contract—which is to say, whenever such misperformance involves a foreseeable, unreasonable risk of harm to the interests of the plaintiff.

\* \* \*

The question appears to be . . . whether the defendant's performance, as distinct from his promise or his preparation, has gone so far that it has begun to affect the interests of the plaintiff beyond the expected benefits of the contract itself, and is to be regarded, by analogy to the cases of gratuitous undertaking, as a positive act assuming the obligation. [Footnotes omitted.]

A careful reading of the Supreme Court authority cited in *Schipani* shows that every case, except *Crews v General Motors,* which was affirmed by an equally divided Court with Justice WILLIAMS writing to reverse on a negligent failure to repair theory, is consistent with the commentators' explanation. Accordingly, we believe that the *Schipani* Court's recognition of the tort of negligent evaluation should be limited to the particular facts of that case.

that this cause of action is contractual and not tortious. Because the gist of plaintiff's first claim is breach of contract, and because plaintiff admits that she failed to exhaust her contractual grievance procedures by pursuing her grievance to binding arbitration, we must conclude that summary disposition for failure to exhaust the grievance and arbitration procedures is appropriate. MCR 2.116(C)(7).

The focus of our inquiry is slightly different with respect to plaintiff's civil conspiracy claim. Unlike plaintiff's first claim, it is clear that if parties conspire to breach a contract, their conduct may be tortious. *Bahr v Miller Bros Creamery*, 365 Mich 415; 112 NW2d 463 (1961). However, in this case plaintiff's pleadings stated mere conclusions that fail to offer direct or circumstantial evidence of an unlawful agreement between the alleged conspirators. Plaintiff's claims that defendants "unfairly and without just cause" failed to fairly evaluate plaintiff's classroom performance, that defendants "maliciously, intentionally, outrageously and with bad faith" caused the unfair evaluations to be placed in plaintiff's personnel file, and that defendants did not follow the specified evaluation procedures in the collective bargaining agreement are mere conclusions that cannot act as supporting facts for the conspiracy charge.

In *Cowan v Federal-Mogul Corp*, 86 Mich App 619; 273 NW2d 487 (1977), this Court held that mere assertions of "bad faith" do not preclude summary judgment dismissing conspiracy claims as a matter of law. None of the facts listed in plaintiff's pleadings could lead a court to a reasonable inference that defendants conspired to have plaintiff transferred or demoted. At best, the facts in the pleadings indicate that defendants per-

formed their teacher evaluation of plaintiff in a negligent fashion and did not follow the procedures set forth in the collective bargaining agreement. The facts do not show, either directly or circumstantially, that there was any agreement between defendants to have plaintiff transferred or demoted. Therefore, the trial court should have dismissed the civil conspiracy charge against defendants.

The trial court should also have granted defendants' summary disposition motion on plaintiff's intentional infliction of emotional distress claim. Our Supreme Court has not yet expressly recognized the existence of this tort, most recently declining to reach the issue in *Roberts v Auto-Owners Ins Co,* 422 Mich 594, 597; 374 NW2d 905 (1985), where it did go so far as to state that a cause of action for intentional infliction of emotional distress will not lie where defendants' conduct, even though unreasonable or in bad faith, was not tortiously outrageous. To the extent that this Court has recognized the tort, we have held that liability may exist only where the conduct has been so outrageous in character or extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized society. *Ledl v Quik Pik Food Stores, Inc,* 133 Mich App 583, 591; 349 NW2d 529 (1984), citing *Ledsinger v Burmeister,* 114 Mich App 12, 18; 318 NW2d 558 (1982). Liability for intentional infliction of emotional distress does not extend to insults, indignities, threats, annoyances, petty oppressions or other trivialities. *Ledsinger, supra.*

Plaintiff has simply failed to allege any conduct which we believe would constitute this tort. Even if defendants were shown to have undertaken the

evaluations in bad faith, such conduct is not tortiously outrageous. Although the continued unannounced visits of Preston-Cooper may have been an indignity or annoyance to plaintiff, this alone will not sustain an action for mental distress. *Ledsinger, supra.* The only thing that plaintiff alleges is that defendants undertook to evaluate her classroom performance, doing it in a negligent fashion with the specific intent of getting her to leave. However, undertaking the evaluations was part of defendants' responsibilities under the collective bargaining agreement.

A person is not liable for intentional infliction of emotional distress where he has done no more than insist upon his legal rights in a permissible way. *Ledl, supra.* This is so even if the actor is aware that such insistence upon his legal rights is certain to cause emotional distress. *Novosel v Sears, Roebuck & Co,* 495 F Supp 344 (ED Mich, 1980). Since defendants were privileged to evaluate plaintiff's classroom performance under the collective bargaining agreement, they cannot be liable for intentional infliction of emotional distress, even if they knew that their evaluations of plaintiff were liable to cause her emotional distress. Therefore, the trial court should have dismissed plaintiff's claim of intentional infliction of emotional distress against defendants.

For the foregoing reasons, the trial court erred in failing to grant summary disposition in favor of the defendants on all three counts of plaintiff's complaint. The decision of the trial court is reversed.