# STATE OF MICHIGAN

# COURT OF APPEALS

YVETTE M. CORMIER,

      Plaintiff-Appellant,

v

PF FITNESS-MIDLAND, LLC, and PLA-FIT
FRANCHISE, LLC,

      Defendants-Appellees,

and

PLANET FITNESS HOLDINGS, LLC, PLANET
FITNESS EQUIPMENT, LLC, PLANET
FITNESS NAF, LLC, PFIP, LLC, and TSG
CONSUMER PARTNERS, LLC,

      Defendants.

UNPUBLISHED
June 1, 2017

No. 331286
Midland Circuit Court
LC No. 15-002463-NZ

Before: O'BRIEN, P.J., and SERVITTO and STEPHENS, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court order granting summary disposition in favor of defendants, PF Fitness-Midland, LLC and PLA-Fit Franchise, LLC ("defendants")[1] pursuant to MCR 2.116(C)(8) in this civil rights action. We affirm.

Plaintiff entered into a membership agreement to use defendants' Planet Fitness gym facility in Midland on January 28, 2015. On February 28, 2015, she entered the women's locker room and encountered a transgender individual (a man who identified as a woman). Plaintiff left the locker room and told the front desk that there was a man in the women's locker room. Plaintiff was advised that it was defendants' policy that people have access to the facility that corresponds with whatever sex with which an individual self-identifies. Defendant's corporate office later advised plaintiff that this was consistent with their policy of not judging whether an

---

[1] The remaining defendants were dismissed from the lawsuit upon the stipulation of the parties.

individual is a man or a woman. Plaintiff returned to the gym several times in the ensuing days and warned other women about the policy and to be careful when using the women's facilities. On March 4, 2015, defendants terminated plaintiff's membership.

Plaintiff thereafter filed the instant lawsuit alleging invasion of privacy; sexual harassment and retaliation in violation of the Elliot Larsen Civil Rights Act, MCL 37.2301 et seq.; breach of contract; intentional infliction of emotional distress; and violation of the Michigan Consumer Protection Act, MCL 445.901 et seq. Defendants each moved for summary disposition (and joined in each other's motion), asserting that plaintiff failed to plead any valid claim. The trial court agreed, granting summary disposition in defendants' favor. This appeal followed.

"This Court reviews decisions on motions for summary disposition de novo to determine if the moving party was entitled to judgment as a matter of law." *Alcona Co v Wolverine Environmental Prod Inc*, 233 Mich App 238, 245; 590 NW2d 586 (1998). MCR 2.116(C)(8) allows a trial court to grant summary disposition when "[t]he opposing party has failed to state a claim on which relief can be granted." MCR 2.116(C)(8). "A motion for summary disposition brought pursuant to MCR 2.116(C)(8) tests the legal sufficiency of the complaint on the allegations of the pleadings alone." *Feyz v Mercy Mem Hosp*, 475 Mich 663, 672; 719 NW2d 1 (2006). "All well-pleaded factual allegations are accepted as true and construed in a light most favorable to the nonmovant." *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999). "Conclusory statements, unsupported by factual allegations, are insufficient to state a cause of action." *Churella v Pioneer State Mut Ins Co*, 258 Mich App 260, 272; 671 NW2d 125 (2003). "[T]he motion tests whether the complaint states a claim as a matter of law, and the motion should be granted if no factual development could possibly justify recovery." *Feyz*, 475 Mich at 672.

This Court also reviews de novo questions of statutory interpretation. See *City of Detroit v Ambassador Bridge Co*, 481 Mich 29, 35; 748 NW2d 221 (2008).

On appeal, plaintiff first asserts that the trial court erred in granting summary disposition in defendants' favor with respect to her civil rights claims. We disagree.

The Elliott Larsen Civil Rights Act ("CRA") "is aimed at the prejudices and biases borne against persons because of their membership in a certain class and seeks to eliminate the effects of offensive or demeaning stereotypes, prejudices, and biases." *Miller v CA Muer Corp*, 420 Mich 355, 363; 362 NW2d 650 (1984) (internal quotations marks and internal citation omitted). The CRA "recognizes that freedom from discrimination because of sex is a civil right." *Hamed v Wayne Co*, 490 Mich 1, 9; 803 NW2d 237 (2011), citing MCL 37.2102(1). "Accordingly, the act prohibits discrimination because of sex in employment, places of public accommodation, and public services." *Id*. Relevant to this case, the CRA defines discrimination because of sex as including sexual harassment:

> Sexual harassment means unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature under the following conditions:

(i) Submission to the conduct or communication is made a term or condition either explicitly or implicitly to obtain employment, public accommodations or public services, education, or housing.

(ii) Submission to or rejection of the conduct or communication by an individual is used as a factor in decisions affecting the individual's employment, public accommodations or public services, education, or housing.

(iii) The conduct or communication has the purpose or effect of substantially interfering with an individual's employment, public accommodations or public services, education, or housing, or creating an intimidating, hostile, or offensive employment, public accommodations, public services, educational, or housing environment. [MCL 37.2103]

"The first two subdivisions of MCL 37.2103(i) describe quid pro quo sexual harassment, while the third subdivision refers to hostile-environment sexual harassment." *Hamed*, 490 Mich at 9-10. "The CRA sexual harassment subsets, MCL 37.2103(i)(*i*) to (*iii*) address not only employment . . . but also discrimination in public services, public accommodations, educational institutions, and housing." *Diamond v Witherspoon*, 265 Mich App 673, 685; 696 NW2d 770 (2005).

A "[p]lace of public accommodation" means a business, or an educational, refreshment, entertainment, recreation, health, or transportation facility, or institution of any kind, whether licensed or not, whose goods, services, facilities, privileges, advantages, or accommodations are extended, offered, sold, or otherwise made available to the public. [MCL 37.2301(a).]

A place of public accommodation also includes certain "private clubs," including "[a] sports or athletic club." MCL 37.2301(a)(*iii*).

The trial court found that "[t]here is no question [Planet Fitness-Midland] fits" the definition of a place of public accommodation, and therefore "is subject to the protections of the statute." Neither party disputes this finding. The next step, then, is to determine whether plaintiff was discriminated against (i.e., sexually harassed) in this place of public accommodation because of her sex.

Before a plaintiff can establish actionable sexual harassment under a hostile work environment theory or a quid pro quo theory, she must first "allege facts showing that she was subjected to 'unwelcome sexual advances,' 'requests for sexual favors,' or 'conduct or communication of a sexual nature'." *Corley v Detroit Board of Ed*, 470 Mich 274, 279; 681 NW2d 342 (2004). According to plaintiff, because of defendants' policy, the transgender man had the opportunity to undress in front of her and to see her undress which, she maintains, is conduct or communication of a sexual nature. See MCL 37.2301. However, the CRA does not define sexual harassment as being subjected to an *opportunity* for a person to engage in verbal or physical conduct or communication of a sexual nature. Rather the CRA requires that the sexual conduct or communication substantially interfered with the plaintiff's utilization of public

accommodations. MCL 37.2103(i)(*i*)-(*iii*). It follows that plaintiff must have actually experienced the conduct or communication she complains of.

The CRA provides that "[a] person alleging a violation of this act may bring a civil action for appropriate injunctive relief or damages, or both." MCL 37.2801(1). In *Burchett v Rx Optical*, 232 Mich App 174, 181; 591 NW2d 652 (1998), this Court concluded "that the Legislature intended to authorize only the person whose civil rights were violated to bring a cause of action under the CRA." While plaintiff made *conclusory statements* that she was subjected to conduct and communication of a sexual nature, she failed to plead factual allegations showing that she was *actually* subjected to verbal or physical conduct or communication of a sexual nature (i.e., that her rights were violated). She did not, for example, allege that she was exposed to male genitalia in the women's locker room. She merely alleged that she, while clothed, saw a clothed man in the women's locker room and further only alleged that defendants' policy "would" and "could" create a hostile environment for women. Given the speculative nature of plaintiff's complaint, without specific allegations showing that plaintiff was, *in fact*, subjected to conduct or communication of a sexual nature (rather than potentially subjected to the same), the trial court correctly granted defendants summary disposition under 2.116(C)(8) on plaintiff's sexual harassment claims. *Corley*, 470 Mich at 279.

The trial court also correctly granted summary disposition to defendants on plaintiff's retaliation claim. The CRA provides that "a person shall not . . . [r]etaliate or discriminate against a person because the person has opposed a violation of this act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this act." MCL 37.2701(a).

> "To establish a prima facie case of retaliation under the Civil Rights Act, a plaintiff must show (1) that the plaintiff engaged in a protected activity, (2) that this was known by the defendant, (3) that the defendant took an . . . action adverse to the plaintiff, and (4) that there was a causal connection between the protected activity and the adverse . . . action." [*Meyers v City of Center Line*, 242 Mich App 560, 568-569; 619 NW2d 182 (2000).]

To engage in a protected activity under MCL 37.2701(a), a plaintiff must clearly convey to an objective defendant that she is "raising the specter of a claim of unlawful discrimination pursuant to the CRA." *Barret v Kirtland Community College*, 245 Mich App 306, 319; 628 NW2d 63 (2001).

Plaintiff argues that she "was engaged in a protected activity, i.e., using the women's locker room and having an expectation to be free from sexual harassment caused by Defendants' policy." "Protected activity," however, plainly refers to the listed actions provided by MCL 37.2701(a): opposing a violation of the CRA, or having made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under the CRA. MCL 37.2701(a). Even if we were to view plaintiff's apparent opposition to defendants' policy as a protected activity, such opposition to a gender-neutral policy would not have conveyed to an objective person that she was raising "the specter of a claim of unlawful discrimination pursuant to the CRA." *Barret*, 245 Mich App at 319. Therefore, she did not *engage* in protected activity. While the trial court determined that defendants' policy did not violate the CRA such that

defendants' could not have improperly retaliated against plaintiff in violation of the act, we will not reverse a trial court's decision if it reached the proper result, albeit for the wrong reason. *Gleason v Michigan Dept of Transp*, 256 Mich App 1, 3; 662 NW2d 822 (2003).

Plaintiff next asserts that the trial court erred in granting summary disposition in defendants' favor on her invasion of privacy claim. We disagree.

"Michigan has long recognized [invasion of privacy] as a common-law tort." *Lewis v LeGrow*, 258 Mich App 175, 183; 670 NW2d 675 (2003). The common-law right of privacy is said to protect against four types of invasion of privacy.

> 1. Intrusion upon the plaintiff's seclusion or solitude, or into his private affairs.
>
> 2. Public disclosure of embarrassing private facts about the plaintiff.
>
> 3. Publicity which places the plaintiff in a false light in the public eye.
>
> 4. Appropriation, for the defendant's advantage, of the plaintiff's name or likeness. [*Battaglieri v Mackinac Center for Public Policy*, 261 Mich App 296, 300; 680 NW2d 915 (2004), quoting *Tobin v Civil Service Comm*, 416 Mich 661, 672; 331 NW2d 184 (1982) (emphasis removed).]

Plaintiff based her claim upon the theory of intrusion into her seclusion or solitude.

> There are three necessary elements to establish a prima facie case of intrusion upon seclusion: (1) the existence of a secret and private subject matter; (2) a right possessed by the plaintiff to keep that subject matter private; and (3) the obtaining of information about that subject matter through some method objectionable to a reasonable man. [*Doe v Mills*, 212 Mich App 73, 88; 536 NW2d 824 (1995)]

"An action for intrusion upon seclusion focuses on the manner in which information is obtained . . .; it is considered analogous to a trespass." *Id*. "Like other torts, there can be no invasion of privacy under the theory of intrusion upon the seclusion of plaintiffs if plaintiffs consented to defendant's intrusion . . ." *Lewis*, 258 Mich App at 194.

It seems clear that, generally, the exposure of one's naked body is "a secret and private subject matter." The Ninth Circuit has stated, "We cannot conceive of a more basic subject of privacy than the naked body." *York v Story*, 324 F 2d 450, 455 (CA 9, 1963). It also seems clear that a person has a "reduced expectation of privacy" in a locker room. *Vernonia Sch Dist 47J v Acton*, 515 US 646, 657; 115 S Ct 2386; 132 L Ed 2d 564 (1995). At the same time, however, arguably one would reasonably expect to share a locker room with only members of the same biological sex. And, there appears to be a greater privacy interest regarding one's naked body when dealing with members of the opposite sex. See e.g., *York*, 324 F 2d at 455 ("The desire to shield one's unclothed figured from view of strangers, and particularly strangers of the opposite sex, is impelled by elementary self-respect and personal dignity."); *Canedy v Boardman*, 16 F 3d 183, 185 (CA 7, 1994) ([W]hile all forced observations or inspections of the naked body

implicate a privacy concern, it is generally considered a greater invasion to have one's naked body viewed by a member of the opposite sex").

However, even assuming plaintiff had a right to keep the exposure of her naked body private from members of the opposite sex in the women's locker room, she has simply not alleged an intrusion of that privacy. Again, plaintiff alleged that she left the locker room after encountering "a large, tall man" and then "thoroughly check[ed]" the locker room before using it on subsequent visits. Her membership to the gym was then terminated. Thus, plaintiff did not undress and shower in the presence of a biological male at defendant Planet-Fitness-Midland's facilities. Further, any intrusion would not have been conducted by defendants or their agents, but by other club members and guests. Because plaintiff did not allege an intrusion of her privacy by defendants, the trial court correctly granted defendants summary disposition under MCR 2.116(C)(8).

Contrary to plaintiff's assertion, this case is not analogous to *Harkey v Abate*, 131 Mich App 177; 346 NW2d 74 (1983). In that case, the defendant had installed see-through panels in the ceiling of the women's restroom at the roller skating rink that he owned, which permitted surreptitious observation from above of the entire interior of the restroom. *Id.* at 179-180. The plaintiff sued the defendant for an invasion of privacy and this Court framed the issue for its consideration as "whether the installation of the hidden viewing devices complained of can itself constitute a sufficient wrongful intrusion into the seclusion or solitude." *Id*. at 181. The Court held that the plaintiff had a right to privacy in the public restroom and that "the installation of the hidden viewing devices alone constitutes an interference with that privacy which a reasonable person would find highly offensive." *Id*. at 182. It further stated that "though the absence of proof that the devices were utilized is relevant to the question of damages, it is not fatal to plaintiff's case." *Id*.

The *Harkey* Court plainly limited its holding to "hidden viewing devices," while recognizing the general rule that an actual intrusion was necessary for an intrusion on seclusion claim. 131 Mich App at 181. An exception for a hidden viewing device was needed because a defendant could always assert that he was not using the device at the time the plaintiff was in its purview. Thus, in *Harkey*, the plaintiff alleged intrusion of privacy but simply could not prove it under the circumstances of the case. In contrast, plaintiff alleges only the possibility of intrusion of privacy. One could argue that an exception similar to the one in *Harkey* would be appropriate for a woman unaware of defendants' policy because the woman may not know the biological sex of the clothed persons in the locker room. Although, even then, it would still be other club members and guests, not defendants, intruding upon plaintiff's privacy and "obtaining of information about that subject matter . . ." *Doe*, 212 Mich App at 88. Regardless, plaintiff does not present that argument, nor does she specifically seek damages for the period before she learned of the policy, January 28, 2015, through February 28, 2015; the date of the original incident. After that date, even though plaintiff did not agree with the policy, her use of the locker room after her knowledge of the policy constituted consent to any intrusion, defeating her claim of invasion of privacy. *Lewis*, 258 Mich App at 195.

Next, plaintiff contends that the trial court erred in granting summary disposition in defendants' favor on her breach of contract claim. We disagree.

"A party claiming a breach of contract must establish by a preponderance of the evidence (1) that there was a contract, (2) that the other party breached the contract and, (3) that the party asserting breach of contract suffered damages as a result of the breach." *Miller-Davis Co v Ahrens Const, Inc (On Remand)*, 296 Mich App 56, 71; 817 NW2d 609 (2012), rev'd in part on other grounds 495 Mich 161 (2014). "[C]ourts must enforce an agreement as written absent an unusual circumstance, such as the contract's violating the law or being contrary to public policy." *Bill & Dena Brown Trust v Garcia*, 312 Mich App 684, 697-698; 880 NW2d 269 (2015).

Plaintiff signed a membership agreement (contract) with defendants, wherein she "agree[d] to comply with Planet Fitness' membership policies and club rules that may be communicated to me from time to time either in writing, through club signage or verbally." The contract further provided that "Planet Fitness may, in its sole discretion modify the policies and any club rule without notice at any time" and "Planet Fitness reserves the right to refund the pro-rated cost of unused services and terminate [any] membership immediately for violation of any membership policy or club rule." Plaintiff does not dispute that defendants had the ability to change their policies, but maintains that the "no judgment" policy allowing people to use the locker room according to the sex they self-identify with violates the CRA. This argument is without merit given that plaintiff failed to adequately plead a violation of the CRA.

Moreover, plaintiff was advised of the club policy on or about February 28, 2015, and, on March 4, 2015, was told by defendants that she must either submit to the policy or have her membership terminated. Plaintiff admitted that she refused to comply with a club policy that she had notice of, which constituted "violation of any membership policy or club rule." Therefore, under the clear language of the contract, defendants had right to terminate her membership. Accepting plaintiff's allegations as true, she failed to plead that defendant breached the contract and the trial court correctly granted defendants summary disposition on this claim.

Plaintiff asserts next that the trial court erred in granting summary disposition in defendants' favor on her claim of intentional infliction of emotional distress, usurping the jury's role of determining what conduct qualified as extreme and outrageous. We disagree.

"Michigan courts have recognized that the common-law tort of intentional infliction of emotional distress vindicates a person's right to be free from serious, intentional and unprivileged invasions of mental and emotional tranquility." *Cotton v Banks*, 310 Mich App 104, 129; 872 NW2d 1 (2015) (internal quotation marks and citation omitted). "To establish a claim of intentional infliction of emotional distress, a plaintiff must prove the following elements: (1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress." *Hayley v Allstate Ins Co*, 262 Mich App 571, 577; 686 NW2d 273 (2004) (internal quotation marks and citation omitted).

"Liability attaches only when a plaintiff can demonstrate that the defendant's conduct is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Lewis*, 258 Mich App at 196 (internal quotation marks and citation omitted). "Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Doe*, 212 Mich App at 91. "It is for the trial court to initially determine whether the defendant's

conduct may reasonably be regarded as so extreme and outrageous as to permit recovery." *Hayley*, 262 Mich App at 577. "But where reasonable individuals may differ, it is for the jury to determine if the conduct was so extreme and outrageous as to permit recovery." *Id*. To establish intent or recklessness, "[a] plaintiff can show that a defendant specifically intended to cause a plaintiff emotional distress or that a defendant's conduct was so reckless that any reasonable person would know emotional distress would result." *Lewis*, 258 Mich App at 197 (internal quotation marks and citation omitted).

Plaintiff's allegations that defendants' policy is extreme and outrageous because "it would allow men to be present while women are changing, showering, or using the restroom" and "would allow a man to disrobe and be naked with the women who are also using said facilities" are insufficient to state a claim for intentional infliction of emotional distress. Transgender rights and policies are polarizing issues and each individual may have a feeling on the issue and on what locker room such individuals should be using. Regardless of whether an average member of the community may find the policy outrageous, the fact is that plaintiff did not suffer severe emotional distress as a matter of law. One encounter with a biological male in a women's locker room, both persons clothed, does not constitute "distress . . . so severe that no reasonable man could be expected to endure it." *Haverbush v Powelson*, 217 Mich App 228, 235; 551 NW2d 206 (1996). Indeed, plaintiff continued to visit the gym and would thoroughly check the women's locker room for biological males apparently ready to experience such an encounter again.

In addition, while plaintiff cites to defendants' attempts to coerce her into submitting to the policy and then terminating her membership, as previously established, defendants had the right under the membership agreement to terminate plaintiff's membership for refusing to comply with the policy. And, "[a] person is not liable for intentional infliction of emotional distress where he has done no more than insist upon his legal rights in a permissible way." *Sankar v Detroit Bd of Educ*, 160 Mich App 470, 483; 409 NW2d 213 (1987). "This is so even if the actor is aware that such insistence upon his legal rights is certain to cause emotional distress." *Id*.

Finally, plaintiff submits that the trial court erred in granting summary disposition to defendants' on her claim brought under the Michigan Consumer Protection Act (MCPA). We disagree.

The MCPA "prohibits the use of unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce." *Zine v Chrysler Corp*, 236 Mich App 261, 270-271; 600 NW2d 384 (1999), citing MCL 445.903(1). "Trade or commerce" is defined as

> the conduct of a business providing goods, property, or service primarily for personal, family, or household purposes and includes the advertising, solicitation, offering for sale or rent, sale, lease, or distribution of a service or property, tangible or intangible, real, personal, or mixed, or any other article, or a business opportunity. [MCL 445.902(1)(g).]

A person who suffers loss as a result of a violation of the MCPA "may bring an action to recover actual damages or $250.00, whichever is greater, together with reasonable attorneys' fees." MCL 445.911(2).

"The MCPA is in many ways derivative of the common-law tort of fraud." *Brownlow v McCall Enterprises, Inc*, 315 Mich App 103, 123; 888 NW2d 295 (2016). However, the MCPA eliminates an essential element of the common-law tort of fraud, i.e., proof of the intent of the merchant in most of the subsections. *Id*. "When the Legislature intended to require a plaintiff to prove the defendant's intent, it specifically so provided in the statute." *Id*. at 125. And, while a common law fraud claim based on misrepresentation requires that the plaintiff show reasonable reliance on misrepresentation, only two of the MCPA's thirty-three "unfair, unconscionable, or deceptive methods, acts or practices" expressly require some form of reasonable reliance by the consumer. See MCL. § 445.903(1)(s) ("which fact could not be reasonably known by the consumer") and (bb) ("a person reasonably believes").

Plaintiff alleged that defendants represented that there were separate locker rooms, shower and restroom facilities for men and women and in having an unwritten policy allowing men who self-identify as women to use the women's facilities defendants violated MCL 445.903(1)(g), (n),[2] (s), (t), (y), (bb), and (cc) of the MCPA. That statute provides, in relevant part:

> (1) Unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce are unlawful and are defined as follows:
>
> * * *
>
> (g) Advertising or representing goods or services with intent not to dispose of those goods or services as advertised or represented.
>
> * * *
>
> (n) Causing a probability of confusion or of misunderstanding as to the legal rights, obligations, or remedies of a party to a transaction.
>
> * * *
>
> (s) Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer.

---

[2] Plaintiff cited MCL 445.911(1)(n), but that statutory subsection does not exist. See MCL 445.911. Considering the allegation accompanying that citation, it is clear that plaintiff was referring to MCL 445.903(1)(n).

(t) Entering into a consumer transaction in which the consumer waives or purports to waive a right, benefit, or immunity provided by law, unless the waiver is clearly stated and the consumer has specifically consented to it.

\* \* \*

(y) Gross discrepancies between the oral representations of the seller and the written agreement covering the same transaction or failure of the other party to the transaction to provide the promised benefits.

\* \* \*

(bb) Making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is.

(cc) Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

In her appeal brief, plaintiff does not cite to any particular subsection of the MCPA buts simply states that a policy allowing men full access to the women's facilities is a material fact that should have been disclosed and that she correctly pled how defendants violated each subsection of the MCPA by either misrepresenting the facts or omitting them entirely. Plaintiff cites to no authority or statute, or even her complaint, in support of her position. It is not sufficient for a party "simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *Wilson v Taylor*, 457 Mich 232, 243; 577 NW2d 100 (1998), quoting *Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959). We consider this claim abandoned on appeal and do not consider it. We also do not consider her claim of error regarding exemplary damages, given our conclusion that all of her claims were properly dismissed.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Deborah A. Servitto
/s/ Cynthia Diane Stephens