## MOLLETT v CITY OF TAYLOR

Docket No. 136281. Submitted August 13, 1992, at Detroit. Decided December 7, 1992, at 10:45 A.M.

Arnold R. Mollett and his wife, Vicki R. Mollett, brought an action in the Wayne Circuit Court against the City of Taylor, its fire chief, and its mayor, alleging that Arnold Mollett, who had retired from his position as battalion chief in the City of Taylor Fire Department had been constructively discharged in violation of the fire and police civil service act, a collective bargaining agreement, and the Due Process Clause of the Fourteenth Amendment. The court, Helene N. White, J., granted summary disposition for the defendants, ruling that the claim was barred because Arnold Mollett failed to exhaust administrative remedies available under the civil service act and the collective bargaining agreement. The plaintiffs appealed.

The Court of Appeals *held:*

1. An employee of a fire or police department who is subject both to the fire and police civil service act, MCL 38.501 *et seq.*; MSA 5.3351 *et seq.*, and to a collective bargaining agreement must exhaust remedies available under the act and the agreement before bringing an action for wrongful discharge, regardless of whether the discharge was actual or constructive.

2. Arnold Mollett's due process rights relating to property and liberty interests in employment and reputation were not violated. Those interests were adequately protected by the remedies provided under the civil service act and the collective bargaining agreement.

Affirmed.

CIVIL SERVICE — FIRE FIGHTERS AND POLICE OFFICERS — CONSTRUCTIVE DISCHARGE — EXHAUSTION OF ADMINISTRATIVE AND CONTRACTUAL REMEDIES.

A wrongful discharge action by a fire or police department

REFERENCES

82 Am Jur 2d, Wrongful Discharge §§ 182, 187, 207.

Exhaustion of grievance procedures or of remedies provided in collective bargaining agreement as condition of employee's resort to civil courts for assertedly wrongful discharge. 72 ALR2d 1439.

employee subject both to the fire and police civil service act and to a collective bargaining agreement, regardless of whether the discharge was actual or constructive, is barred where the employee failed to exhaust remedies available under the civil service act and the collective bargaining agreement (MCL 38.501 *et seq.*; MSA 5.3351 *et seq.*).

*Dean Koulouras* and *John F. Walsh, (John A. Lydick* and *Amy R. Snell,* of Counsel), for the plaintiffs.

*Dickinson, Wright, Moon, Van Dusen & Freeman* (by *Henry W. Saad, Noel D. Massie,* and *Elizabeth M. Pezzetti*), for the defendants.

Before: Neff, P.J., and Gribbs and Shepherd, JJ.

Shepherd, J. Plaintiffs appeal as of right a circuit court decision granting defendants' motion for summary disposition under MCR 2.116(C)(10) and dismissing their constructive discharge lawsuit. We affirm.

On July 24, 1988, plaintiff Arnold R. Mollett[1] retired from his position as a battalion chief in the City of Taylor Fire Department. On August 24, 1989, plaintiff filed a constructive discharge lawsuit, claiming violations of his statutory right to continued employment under the firemen and policemen civil service act, 1935 PA 78, MCL 38.501 *et seq.*; MSA 5.3351 *et seq.*, as amended by 1986 PA 155, the collective bargaining agreement between defendant City of Taylor and the Taylor Firefighters' Union, and the Due Process Clause of the United States Constitution, US Const, Am XIV. Plaintiff alleges that he was forced to resign

---

[1] Hereafter, we use plaintiff in the singular to refer to Arnold Mollett. The claims of his wife, plaintiff Vicki Mollett, are derivative, and she was not involved in the events giving rise to the lawsuit.

his position because defendant Robert Diel, the fire chief, subjected him to job-related harassment after a jury in federal court acquitted plaintiff of mail fraud relating to alleged fraudulently obtained copies of the lieutenant's examination used by the Taylor Fire Department. In his complaint, plaintiff alleges that defendant Diel harassed him from 1984 until July 1988, when he resigned, and that defendant Cameron G. Priebe, Mayor of the City of Taylor, refused to rectify the situation even though he was fully aware of Diel's harassment. Specifically, plaintiff alleges:

(15) Said harassment included but was not limited to:

(a) refusal to promote Plaintiff when he placed higher in competitive scores than officers who were promoted.

(b) Forced Plaintiff to perform menial tasks in front of men that worked for Plaintiff.

(c) Denied access to his subordinates when the rules and regulations called for his supervision over said employees.

(d) That there was [sic] countless times when Defendant DIEL would verbally abuse and mistreat Plaintiff in front of other members of the Department.

(e) He was on numerous occasions punished by Chief DIEL without the opportunity to have a hearing as required by the rules and regulations.

(f) That while he held the position of Shift Commander he was put on the night watch and had a lesser ranking man placed over Plaintiff and his subordinates, contrary to the rules and regulations.

(g) That Defendant DIEL would not allow any courtesies, such as switching days off to Plaintiff as he did to his polictical [sic] cronies and personal friends.

In paragraph 20, plaintiff contends that Diel's harassment also included, but was not limited to:

(a) Refusing to communicate to Plaintiff regarding matters normally communicated to senior officers, in effect refusing to recognize Plaintiff for his attained position.

(b) Refusing to allow Plaintiff the full use of the office and office equipment.

(c) Imposing unnecessary and unreasonable requirements and restrictions on Plaintiff when Plaintiff was hurt during the course of his employment.

(d) Imposing unnecessary and unreasonable requirements and restrictions on Plaintiff when he was on sick leave.

In paragraph 23, plaintiff further alleges that Diel's harassment included, but was not limited to:

(a) Refusing to allow Plaintiff the opportunity to carry out the duties of Battalion Chief as required by the rules and regulations.

(b) Refusing permission to Plaintiff to use the office and office equipment or to properly use the services of the clerical staff.

(c) Publicly berating Plaintiff in from [sic] of his subordinates.

(d) Publicly berating and embarrassing Plaintiff by making derogatory statements over the public address system.

(e) Refused Plaintiff personal days off for no other reason than harassment.

(f) Frequent reprimands that were totally unjustified, unwarranted and unfounded, and never formally brought on for hearings.

As a result of the defendants' "campaign of harassment," plaintiff alleges that he was constructively discharged.

Before his retirement on July 24, 1988, plaintiff did not complain to the civil service commission established by the City of Taylor under the act or file any grievance in accordance with the collective

bargaining agreement.[2] In dismissing plaintiff's claims, the trial court held that plaintiff was required to exhaust his administrative remedies available under the act and the collective bargaining agreement before filing an action in circuit court.

I

Before turning to the substantive issues on appeal, we first address plaintiff's contention that the trial court relied upon the wrong subrule under MCR 2.116(C) in granting summary disposition. In *Sankar v Detroit Bd of Ed,* 160 Mich App 470, 473, n 1; 409 NW2d 213 (1987), this Court noted that MCR 2.116(C)(7) is the proper subrule for deciding whether to grant a motion for summary disposition for failure to exhaust grievance and arbitration procedures. While the trial court granted summary disposition under MCR 2.116(C)(10), no genuine issue of material fact, we note that plaintiff's procedural challenge to the order of summary disposition lacks merit, as exact technical compliance with MCR 2.116(C) is not required. *Moy v Detroit Receiving Hosp,* 169 Mich App 600, 605; 426 NW2d 722 (1988). Because it does not appear that either party was misled by the mislabeling of the motion for summary disposition, we will review this case as a motion for summary disposition under MCR 2.116(C)(7).

In reviewing a motion for summary disposition under MCR 2.116(C)(7), this Court must accept as

---

[2] The last grievance that plaintiff filed was in August 1985, protesting defendant Diel's failure to promote him to captain, even though plaintiff was at the top of the eligibility list. Plaintiff alleges that Diel continued to believe that plaintiff had fraudulently obtained an advance copy of the examination for promotion to lieutenant. The grievance was not formally resolved, but was rendered moot because plaintiff was promoted to battalion chief as a result of collective bargaining in 1986.

true all the plaintiff's well-pleaded allegations and construe them most favorably to the plaintiff. *Coleman v Dowd,* 185 Mich App 662, 665; 462 NW2d 809 (1990). Summary disposition is inappropriate unless no factual development could provide a basis for recovery. *Markis v Grosse Pointe Park,* 180 Mich App 545, 551; 448 NW2d 352 (1989).

The firemen and policemen civil service act (Act 78) sets forth the following purposes in its preamble:

> [T]o establish and provide a board of civil service commissioners in cities, villages, and municipalities having full-time paid members in the fire and/or police departments; to provide a civil service system based upon examination and investigation as to merit, efficiency, and fitness for appointment, employment, and promotion of all full-time paid members appointed in the fire and police departments and respective cities, villages, and municipalities; to regulate the transfer, reinstatement, suspension, and discharge of said officers, firemen and policemen . . . .

Once the act is adopted by the voters of a city, village, or municipality, a three-member civil service commission is established. MCL 38.502; MSA 5.3352. The first member is "appointed by the principal elected officer of the city, village or municipality"; the second member is selected by the paid members of the fire or police department; and the third member is selected by agreement of the other two members.

MCL 38.514(1); MSA 5.3364(1) (Section 14) provides that any member of a police or fire department "may be removed or discharged, suspended without pay, [or] deprived of vacation privileges" for various forms of misconduct:

> However, a member of any fire or police depart-

ment encompassed by this act shall not be re-moved, discharged, reduced in rank or pay, sus-pended, or otherwise punished except for cause, and in no event until he or she has been furnished with a written statement of the charges and the reasons for the actions.

Charges must be filed within ninety days, and the affected employee may answer the charges and demand a public hearing. Section 14 goes on to provide:

If the removing officer fails to make charges to the satisfaction of a member or members of a fire or police department in a city, village, or munici-pality, the member or members of the fire or police department may present the information to the civil service commission.

Although there is no provision in the act allowing a member of a police or fire department to file an action in circuit court, a decision of the civil service commission may be appealed to circuit court. MCL 38.514; MSA 5.3364.

The collective bargaining agreement between Local 1252, International Association of Firefight-ers and the City of Taylor provides fire fighters with the right to bring grievances and for an arbitrator to rule on those grievances. Pursuant to Article III, Section 1:

Employees shall have the right . . . to express or communicate any view, grievance, complaint or opinion related to the conditions or compensation of public employment or their betterment, all free from any and all restraint, interference, coercion, discrimination or reprisal.

Article XVI, Section 1, of the agreement further provides a standard three-step grievance proce-

dure, culminating in final and binding arbitration or an Act 78 hearing, at the union's option, if "any differences, disputes or complaints arise as to the meaning of application of the provisions of this Agreement." Section 1(C) states: "The demand for one procedure shall act as a firm and final waiver of the other." However, Article XVI, Section 2— Other Remedies provides:

> Subject to the restrictions contained in [1(C)] above, the grievance procedures provided in this agreement shall be supplementary or comulative [sic] to, rather than exclusive of, any procedures or remedies afforded to any employee by law.

On appeal, plaintiff asserts that he is not required to exhaust administrative remedies under either the collective bargaining agreement or Act 78 before filing suit in circuit court because he is seeking to enforce due process rights afforded him by the United States Constitution. Alternatively, plaintiff argues that, even if he were required to exhaust administrative remedies, the requirement was excused in this case because it would have been an exercise in futility. Before considering plaintiff's due process claim, we will first examine whether plaintiff was required to exhaust the administrative remedies available to him.

II

The primary goal of judicial interpretation of statutes is to ascertain and give effect to the intent of the Legislature. *State Treasurer v Wilson,* 423 Mich 138, 143; 377 NW2d 703 (1985); *Joy Management Co v Detroit,* 176 Mich App 722, 730; 440 NW2d 654 (1985). Statutory language should be given a reasonable construction in light of the purpose of the act to avoid absurd or unreasonable

consequences. *Reisman v Wayne State University Regents,* 188 Mich App 526, 536; 470 NW2d 678 (1991).

The general purpose of the civil service act in question is to protect all personnel in police and fire departments from arbitrary and unjust removal. *Day v Gerds,* 54 Mich App 547; 221 NW2d 221 (1974). Although the act does not specify whether a constructively discharged fire fighter may file suit in circuit court without first presenting his claims to the civil service commission, indeed it makes no express reference to constructive discharge, there does not appear to be any reason why employees of police or fire departments claiming constructive discharge should stand on different legal footing than those claiming ordinary discharge. While "discharge" is not specifically defined in the statute, it can only mean an involuntary termination of employment. *LeGalley v Bronson Community Schools,* 127 Mich App 482, 486-487; 339 NW2d 223 (1983). As defined by previous panels of this Court, the term "constructive discharge" refers to "a facially voluntary termination which should legally be considered an involuntary one." *Id.; Fischhaber v General Motors Corp,* 174 Mich App 450, 454-455; 436 NW2d 386 (1988). In *Mourad v Auto Club Ins Ass'n,* 186 Mich App 715, 721; 465 NW2d 395 (1991), this Court stated:

> A constructive discharge occurs when an employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation or, stated differently, when working conditions become so difficult or unpleasant that a reasonable person in the employee's shoes would feel compelled to resign.

In light of the purpose of the act, we do not believe that the Legislature intended to treat employees alleging constructive discharge differently from ordinary discharged employees.

The question presented in this case is whether a constructively discharged employee must exhaust his administrative remedies available under Act 78 or the collective bargaining agreement before commencing an action in circuit court. It is well settled that a civil service employee must exhaust his administrative remedies before filing suit in circuit court. *Bays v Dep't of State Police,* 89 Mich App 356, 359-360; 280 NW2d 526 (1979). In *Int'l Business Machines v Dep't of Treasury,* 75 Mich App 604, 610; 255 NW2d 702 (1977), this Court stated:

> Exhaustion of administrative remedies serves several policies: (1) an untimely resort to the courts may result in delay and disruption of an otherwise cohesive administrative scheme; (2) judicial review is best made upon a full factual record developed before the agency; (3) resolution of the issues may require the accumulated technical competence of the agency or may have been entrusted by the Legislature to the agency's discretion; and (4) a successful agency settlement of the dispute may render a judicial resolution unnecessary.

See also *Bonneville v Michigan Corrections Organization, Service Employees Int'l Union,* 190 Mich App 473, 476; 476 NW2d 411 (1991).

In this case, plaintiff has a two-fold set of state-created administrative remedies under Act 78 and the collective bargaining agreement entered into by the defendant City of Taylor. Given that there is no legal difference between expressly discharged employees and constructively discharged employees, we hold that plaintiff must exhaust his admin-

istrative remedies before commencing an action in circuit court.

Contrary to plaintiff's contention, the trial court did not fail to answer the legal question whether he was required to present his claims to the civil service commission or to an arbitrator. The trial court stated:

> If [the Civil Service Commission] didn't respond to [the grievance] then the plaintiff would have an appeal to the Circuit Court. Ultimately, the legal question would have to be presented to the Circuit Court and presumably will not go to the Court of Appeals and that is; do the Plaintiff's remedies change on account of the constructive discharge? I think that's the only question. Is he in a different boat because they didn't say: out the door. They just forced him out the door. Is he no longer restricted to collective bargaining in Civil Service remedies because of that and does he somehow now have a separate cause of action in Circuit Court? Is he different from all other employees who might be terminated for violation in the Civil Service proceedings?

The trial court concluded that the statute does apply to plaintiff's constructive discharge claim:

> [T]he Plaintiff may not have had a right not to have all of these things done to him individually, but the culminative [sic] effect of all of this was that he was being punished and unfairly so. *So that he does fall within the explicit language of 38.524, where it says that the member may not be removed as charged, reduced in rank or pay, suspended or otherwise punished.*
>
> What he is really arguing is that all of these things that were done to him in effect were punishment and unjustified punishment and that *therefore he could have complained to the Civil Service Commission.* [Emphasis provided.]

Furthermore, we do not believe that the trial court committed error when it held that plaintiff could not file an independent action in circuit court. In support of this position, plaintiff cites the following language from § 14:

> If the removing officer fails to make charges to the satisfaction of a member or members of a fire or police department in a city, village, or municipality, the member or members of the fire or police department *may* present the information to the civil service commission." [Emphasis provided.]

Plaintiff alleges that use of the word "may," instead of "shall," in the above section means that, in the absence of satisfactory charges, a constructively discharged civil service employee may choose to present his claim to the civil service commission or proceed directly to circuit court. We disagree.

The word "shall" is generally used to designate a mandatory provision, while "may" designates discretion. *People v Kelly,* 186 Mich App 524, 529; 465 NW2d 569 (1990). We note that "may" in this context simply means that a discharged employee may present a claim to the civil service commission or choose to do nothing at all. There is of course no requirement that a discharged civil service employee present a claim to the civil service commission, because an employee may accept the discharge without complaint. But if an employee chooses to contest the discharge, the employee must present a claim to the civil service commission or seek arbitration.

Moreover, we do not believe that plaintiff was excused from presenting his claim to the civil service commission just because defendants had not filed written charges against him in accor-

dance with § 14. Although an employer must "furnish [the member] with a written statement of the charges and the reasons for the actions . . . within 30 days after the date the violation occurred," no written charges were filed against plaintiff. Notwithstanding this fact, we note that plaintiff could have presented his constructive discharge claim to the civil service commission and requested reinstatement to his position. The civil service commission could have granted or refused a hearing regarding this matter. In either event, if plaintiff had not been satisfied with the response of the civil service commission, he could have appealed to circuit court. Whatever action the civil service commission would have taken, its decision would have been subject to judicial review.

We also reject plaintiff's contention that the grievance procedure established under the collective bargaining agreement does not apply to this type of employment dispute.

As our Supreme Court observed in *St Clair Prosecutor v AFSCME,* 425 Mich 204, 218-219; 388 NW2d 231 (1986), the general rule regarding jurisdiction on arbitration issues was enunciated in *Kaleva-Norman-Dickson School Dist v Kaleva-Norman-Dickson Teachers' Ass'n,* 393 Mich 583, 593-594; 227 NW2d 500 (1975). In *Kaleva,* p 591, the Court, quoting from *United Steelworkers of America v American Mfg Co,* 363 US 564, 568; 80 S Ct 1343; 4 L Ed 2d 1403 (1960), stated:

> .[W]hile the question whether a dispute is arbitrable is for a court, the judicial inquiry "is confined to ascertaining whether the party seeking arbitration is making *a claim which on its face* is governed by the contract." Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator. [Emphasis in original.]

In *Kaleva,* p 592, our Supreme Court further stated:

> Absent an "*express provision* excluding [a] particular grievance from arbitration" or the "*most forceful evidence* of a purpose to exclude the claim, . . . the matter should go to arbitration. [Emphasis in original.]

Any doubts should be resolved in favor of arbitrability. *Monroe Co Sheriff v FOP, Lodge 113,* 136 Mich App 709, 715; 357 NW2d 744 (1984).

In the instant case, plaintiff's constructive discharge claim appears to be an arbitrable issue, because plaintiff made a claim that on its face was governed by the collective bargaining agreement. Further, the matter was arbitrable because the collective bargaining agreement did not expressly exclude from arbitration claims arising under the management rights provision, and plaintiff did not provide any evidence of a purpose to exclude the claim from arbitration. *Kaleva, supra.* Thus, we agree with the trial court that plaintiff's complaints could have been submitted to arbitration under the collective bargaining agreement.

We also do not believe that plaintiff was excused from exhausting administrative remedies because it would have been futile to present his claim to the civil service commission or to an arbitrator pursuant to the collective bargaining agreement. The record reveals that, after the 1985 grievance relating to his promotion to captain, plaintiff never attempted to complain or invoke any administrative remedy protesting the alleged harassment by defendant Diel. There is nothing that indicated that claims filed with the civil service commission or an arbitrator would have been futile. Although plaintiff insinuates that the civil service commis-

sion is not an impartial body, we note that only one member is appointed by the mayor, while the second is selected by the employees and the third is selected by the other two. Plaintiff's mere speculation that the members of the civil service commission or an arbitrator could not be unbiased does not excuse his failure to invoke the available remedies. *Bays, supra.*

Moreover, we note that plaintiff's claim of constructive discharge does not raise any unlawful reasons for discrimination, such as race, sex, or handicap. Cf. *Kewin v Melvindale Bd of Ed,* 65 Mich App 472; 237 NW2d 514 (1975). Such claims have been held to create separate causes of action that may be pursued in court without exhausting administrative remedies. See, e.g., 42 USC 2000e *et seq.; Alexander v Gardner-Denver Co,* 415 US 36; 94 S Ct 1011; 39 L Ed 2d 147 (1974); Civil Rights Act, MCL 37.2101 *et seq.;* MSA 3.548(101) *et seq.;* Handicappers' Civil Rights Act, MCL 37.1101 *et seq.;* MSA 3.550 (101) *et seq.; Marsh v Dep't of Civil Service,* 142 Mich App 557, 562-569; 370 NW2d 613 (1985); *Michigan Professional Employees Society v Dep't of Natural Resources,* 152 Mich App 595, 599-600; 394 NW2d 786 (1986). Finally, there is no indication that exhaustion was not required because the union breached its duty of fair representation. See *Pompey v General Motors Corp,* 385 Mich 537; 189 NW2d 243 (1971); *Vaca v Sipes,* 386 US 171; 87 S Ct 903; 17 L Ed 2d 842 (1967); *Kewin, supra,* pp 477-479; *Marsh, supra,* p 563, n 2.

In summary, we hold that a constructive discharge of a public employee based on considerations other than those that give rise to a statutorily created and separate cause of action is to be treated no differently than an actual discharge that would require recourse to the civil service

commission or the collective bargaining agreement.

III

Plaintiff nonetheless argues that he is not required to exhaust administrative remedies because he is seeking to enforce due process rights afforded by the United States Constitution.

The Due Process Clause of the Fourteenth Amendment protects life, liberty, and property. *Cleveland Bd of Ed v Loudermill,* 470 US 532, 538, n 3; 105 S Ct 1487; 84 L Ed 2d 494 (1985). Contract rights are considered a species of property within the meaning of the Due Process Clause. *Perry v Sindermann,* 408 US 593, 601-602; 92 S Ct 2694, 2699-2700; 33 L Ed 2d 570 (1972). A property interest in a person's means of livelihood is one of the most significant that an individual may possess. *Loudermill, supra,* p 543. Although reputation, standing alone, is not a constitutionally protected interest, reputation may constitute a liberty or property interest sufficient to invoke the protection of the Due Process Clause when it is connected with some more tangible interest, such as employment. *Paul v Davis,* 424 US 693, 701; 96 S Ct 1155; 47 L Ed 2d 405 (1976). To establish a liberty interest, the employee must show conduct of the governmental employer that "might seriously damage his standing and associations in his community," or that impose a "stigma or other disability" that denies him the "freedom to take advantage of other employment opportunities." *Bd of Regents of State Colleges v Roth,* 408 US 564, 573; 92 S Ct 2701; 33 L Ed 2d 548 (1972).

To file a complaint against state officials alleging the denial of any rights under the United States Constitution, a plaintiff must bring an action un-

der 42 USC 1983. *Montgomery v Detroit,* 181 Mich App 298, 308; 448 NW2d 822 (1989). In establishing a cause of action against state officials under § 1983, the plaintiff must plead and prove (1) that he has been deprived of a federal right and (2) that the defendant deprived him of that right while acting under color of state law. *Parratt v Taylor,* 451 US 527; 101 S Ct 1908; 68 L Ed 2d 420 (1981). In addition, to establish a § 1983 claim against a municipality, a plaintiff must show that a municipal custom or policy caused a violation of the victim's constitutional rights. *Monell v New York City Dep't of Social Services,* 436 US 658, 690-691; 98 S Ct 2018; 56 L Ed 2d 611 (1978); *York v Detroit (After Remand),* 438 Mich 744, 755; 475 NW2d 346 (1991).

In the instant case, plaintiff never argued this due process claim or its denial below. Further, plaintiff has not specifically asserted that 42 USC 1983 provides the basis for his due process claim. Notwithstanding plaintiff's inartfulness in articulating the legal basis for his claim, we note that plaintiff's complaint was sufficient to put defendants Diel and Priebe on notice that he was alleging a § 1983 cause of action based upon a denial of due process. Although plaintiff specifically alleges that due process was violated because defendants Diel and Priebe acted under color of state law when they infringed both his property interest in his employment and his liberty interest in his reputation as a fire fighter, plaintiff failed to establish a § 1983 action against defendant City of Taylor, because he did not allege that a municipal custom or policy caused a violation of his constitutional rights. Thus, the question posed is whether the alleged harassment of plaintiff by defendants Diel and Priebe violated the Due Process Clause.

In this instance, we believe that the availability

of the state-created administrative remedies satisfied the requirements of due process and gave plaintiff all the process that was constitutionally due him. *Bass v Spitz,* 510 F Supp 182 (ED Mich, 1981). The state created two administrative procedures that plaintiff could have pursued in order to obtain relief. Nothing in the record substantiates plaintiff's bare assertion that he was denied the remedies provided by Act 78 and the collective bargaining agreement. Under the act, the civil service commission is obliged to consider complaints alleging discharge, along with other complaints regarding actions other than discharge. *Potthoff v Saginaw Police & Fire Dep't Civil Service Comm,* 16 Mich App 697, 699; 168 NW2d 621 (1969). Given that a constructive discharge case is to be treated the same as an express discharge case, the civil service commission was thus obliged to consider plaintiff's claim of constructive discharge. If the civil service commission had refused to hear and determine the matter, or if the union had refused to invoke the grievance procedures under the collective bargaining agreement, *Pompey, supra,* or if the arbitrator had refused to consider the claim, then plaintiff would have been without remedies. But that was not the case. Because plaintiff failed to avail himself of the two state-created remedial procedures, we must conclude that there was no violation of plaintiff's due process rights.

Accordingly, we conclude that a constructively discharged employee, like an expressly discharged employee, must exhaust his administrative remedies. Given that plaintiff failed to exhaust the available administrative remedies, we thus affirm the trial court's order granting defendants' motion for summary disposition pursuant to MCR 2.116(C)(7).

Affirmed.