# STATE OF MICHIGAN

# COURT OF APPEALS

---

STEPHEN SKALNEK, and
SKALNEK FORD INC.,

        Plaintiffs-Appellees,

v

RICHARD SKALNEK, and
CLEAN CARS COMPANY INC.,

        Defendants-Appellants,

and

CLEAN CARS FINANCE COMPANY INC.,

        Defendant.

UNPUBLISHED
October 26, 2017

No. 333085
Oakland Circuit Court
LC No. 2016-152352-CB

---

Before: SHAPIRO, P.J., and HOEKSTRA and M. J. KELLY, JJ.

PER CURIAM.

In this action alleging shareholder oppression, defendants appeal from the trial court's order denying summary disposition pursuant to MCR 2.116(C)(7) (claim is subject to an agreement to arbitrate). Because the parties' agreement did not provide for mandatory arbitration, we affirm the trial court's order granting summary disposition.[1]

---

[1] This Court reviews de novo a lower court's decision on a motion for summary disposition, *Cuddington v United Health Servs, Inc*, 298 Mich App 264, 270; 826 NW2d 519 (2012). Additionally, the existence and enforceability of an arbitration agreement is a question of law that this Court determines de novo. *Michelson v Voison*, 254 Mich App 691, 693-694; 658 NW2d 188 (2003).

Plaintiff Stephen and Defendant Richard are brothers and the sole shareholders, officers, and directors of plaintiff Skalnek Ford, Inc.,[2] which was founded by the parties' parents in the mid-1960s. Both parties began working in the dealership as young teenagers. When the parties' parents retired from the business in 1995, they transferred the stock owned by them to Stephen and Richard. At the time of the transfer, Richard owned 7,201 shares and Stephen owned 6,199 shares. In 2002, a stock certificate was issued to the parties, through their trust, giving Richard 16,001 shares (50.003% of the company), and Stephen 15,999 shares (49.997% of the company).

In 2008, a dispute arose between the parties which resulted in filing of a lawsuit by Stephen. While the lawsuit was pending, the parties entered into an agreement in August 2010 titled, "Agreement regarding retention by Skalnek Ford, Inc. of third party to resolve certain disputes" (hereinafter, "Dispute resolution agreement). The dispute resolution agreement provides in relevant parts as follows:

> 1. *Retention of Robert Weller.* The parties agree that Robert Weller will be retained by Skalnek Ford, Inc. ("SFI" or the "Company") as the initial third party to assist the Parties in resolving certain disputes in the event that the Parties are unable to agree on important issues affecting SFI or the Parties' interests as shareholders or employees.

> 2. *Submission of dispute.* Either party may submit a dispute for resolution by Weller or subsequently-named third party only after the party had made a good faith effort to resolve the dispute with the other party. The dispute must be submitted to the third party in writing with a copy delivered contemporaneously to the other party either by hand-delivery or mail.

> 3. *Facilitation or Determination of outcome.* Weller or subsequently-named third party is empowered to resolve the dispute either through facilitating a resolution or, if necessary, determining how the dispute will be resolved.

Paragraph 6 of the dispute resolution agreement gave the parties the right to appeal Weller's decision through binding arbitration and provides as follows:

> *Right to Appeal.* If Weller, or subsequently-named third party, determines the outcome of the dispute, the decision can be appealed through binding arbitration. The appeal must be initiated within three (3) business days of each party having received the decision by sending to Weller or subsequently named third party and the other party a Notice of Appeal which is to be hand-delivered or sent by e-mail. The arbitration will be conducted by a single arbitrator in a private arbitration proceeding and will be completed in thirty (30) days of the appointment of the arbitrator unless a longer time is agreed to by the parties. The cost of the arbitrator will be the responsibility of SFI unless other directed by the

---

[2] Skalnek Ford, Inc. operates as a Ford Motor company authorized dealership engaged in the business of automobile sales and services.

arbitrator in the arbitration award and the arbitrator may award sanctions in accordance with paragraph 5 of this Agreement. The arbitrator will be chosen as follows:

      (a) The party seeking the appeal will submit the manes of three proposed arbitrators to the other party at the same time the notice of the appeal is provided.

      (b) The other party may either accept one of the arbitrators, or submit his own list if three arbitrators within two (2) business days. If the other party does neither, Weller or subsequently-named third party will choose the arbitrator from the three proposed arbitrators submitted by the appealing party.

      (c) If an alternative list is provided by the other party within two (2) business days, each party will rank all six (6) arbitrators and submit the ranking to Weller. The arbitrator with the lowest composite score will be deemed chosen. In the event of a tie, Weller or subsequently-named third-party will choose the arbitrator from the two persons receiving a tied vote.

Thereafter, the issues in the pending lawsuit were referred to arbitration resulting in a partial award, followed by a final arbitration award, which was confirmed by the circuit court.

Stephen alleged that after he filed suit in 2008, Richard refused to speak with him or include him in management meetings, ostracized him, "repeatedly sought to take advantage of virtually any opportunity to benefit himself financially at Stephen's expense," and engaged in conduct that violated his rights at the business, contrary to the arbitration award. He stated that he was then compelled to file a Notice of Dispute (NOD), where the issues were submitted to Weller for resolution. According to Stephen, even after Weller issued his rulings, Richard routinely violated the rulings and used his two-share majority in the company to abuse Stephen.

In 2016, Stephen, individually and derivatively in the name of Skalnek Ford, Inc., filed a six count-complaint against defendants alleging shareholder oppression, breach of fiduciary duties, unjust enrichment, and usurpation of corporate opportunity. Plaintiffs asked the court to issue a preliminary and permanent injunction against defendants, and to enter a declaratory judgement for damages and equitable relief, plus costs and attorney fees. Stephen asked the court to order Richard to purchase his shares in Skalnek Ford, Inc. at fair value.

Defendants moved for summary disposition pursuant to MCR 2.116(C)(7) asking the court to dismiss plaintiffs' claim and to compel arbitration. Defendants asserted that the parties' dispute resolution agreement established a two-step arbitration process, which compelled arbitration in situations where the disputes arose out of the parties' status as shareholders or employees of Skalnek Ford, Inc. According to defendant, the allegations contained in plaintiffs' complaint show that the dispute was subject to mandatory arbitration. In response, plaintiffs argued that the plain language of the dispute resolution agreement established that the process was not mandatory as demonstrated by the use of the word "may." The trial court agreed and denied defendant's motion for summary disposition.

The trial court correctly held that the parties' dispute resolution agreement was discretionary. The interpretation of the dispute resolution agreement is controlled by principles

of contract interpretation. " 'Arbitration is a matter of contract.' " *Altobelli v Hartmann*, 499 Mich 284, 295; 884 NW2d 537 (2016) (citation omitted). Therefore, this Court must apply contract interpretation legal principles when interpreting an arbitration agreement. *Id.* The "primary task in construing a contract is to give effect to the parties' intentions at the time they entered into the contract, which requires an examination of the language of the contract according to its plain and ordinary meaning." *Beck v Park West Galleries, Inc*, 499 Mich 40, 45-46; 878 NW2d 804 (2016). "The existence of an arbitration contract and enforceability of its terms are judicial questions that cannot be decided by the arbitrator." *Huntington Woods v Ajax Paving Indus, Inc* (*After Remand*), 196 Mich App 71, 74; 492 NW2d 463 (1992).[3]

In the instant case, defendant argues that paragraph 2 of the parties' dispute resolution agreement constitutes a mandatory arbitration provision. Paragraph 2 provides as follows:

> 2. *Submission of dispute.* Either party may submit a dispute for resolution by Weller or subsequently-named third party only after the party had made a good faith effort to resolve the dispute with the other party. The dispute must be submitted to the third party in writing with a copy delivered contemporaneously to the other party either by hand-delivery or mail.

Although the trial court and the parties treated this provision as an agreement to arbitrate, it is questionable whether this provision really constitutes an agreement to arbitrate as it lacks all the terms and structure of an arbitration agreement. Paragraphs 1-3 do not use the term arbitration. Instead, they refer to using Weller "to assist the parties in resolving certain disputes" and that he is "empowered to resolve the dispute either through facilitating a resolution or, if necessary, determining how the dispute will be resolved." The only phrase in these paragraphs that suggest that Weller may conduct arbitration is the reference to "determining how the dispute will be resolved."[4] It is not even clear whether this empowered Weller to resolve the dispute and bind the parties to his resolution or merely to define a means of reaching resolution. Notably, arbitration is not mentioned until paragraph 6 which concerns the "appeal" of any decision by Weller. The only arbitration provision in the agreement is paragraph 6, the right-to-appeal provision. The use of the word "arbitration" in paragraph 6 shows that the parties knew what

---

[3] Generally, "[a]n agreement contained in a record to submit to arbitration any existing or subsequent controversy arising between the parties to agreement is valid, enforceable, and irrevocable except on a ground that exists at law or in equity for the revocation of a contract." MCL 691.1686(1). "The court shall decide whether an agreement to arbitrate exists or a controversy is subject to an agreement to arbitrate." MCL 691.1686(2). On a motion to enforce an agreement to arbitrate, the trial court must, in the event a party opposes arbitration, order arbitration "unless it finds that there is no enforceable agreement to arbitrate." MCL 691.1687(1)(b).

[4] Paragraph 3 of the parties' dispute resolution agreement states that "Weller or subsequently named third party is empowered to resolve the dispute either through facilitation or, if necessary, determining how the dispute will be resolved."

-4-

arbitration was, including the procedure; and could have used the terminology in paragraphs 1-3[5] had they wished to define Weller's role as that of an arbitrator.

Moreover, to the degree the agreement provides for Weller to resolve disputes, its language demonstrates an intention to make the dispute resolution process permissive and not mandatory. First, the agreement stated that either party "may" submit a dispute for resolution regarding "important issues affecting [Skalnek Ford, Inc.] or the Parties' interest as shareholders or employees." A review of the parties' pleadings leaves no doubt that the dispute between the parties involves important issues affecting Skalnek Ford, Inc. and the parties' interests as shareholders and employees. Generally, the word "may" is "permissive rather than mandatory in contrast to the word 'shall' " *Perkovic v Zurich American Ins Co*, 500 Mich 44, 61-62; 893 NW2d 322 (2017). Moreover, paragraph 2 demonstrates that the parties understood the difference between mandatory and permissive language as it provides that if either party choose to submit their dispute to Weller or a subsequently-named individual, that party "must" follow the procedure outlined in the preceding paragraph. According to the agreement, "[t]he dispute must be submitted to the third party in writing with a copy delivered contemporaneously to the other party either by hand-delivery or email." The use of the word "may" in the context of submission of the dispute to arbitration, and the word "must" for the process of submission of the dispute, strongly supports the view that the arbitration provision is permissive.

In the context of statutory interpretation, this Court has held that generally, "the word 'may' will not be treated as a word of command unless there is something in the context or subject matter of the act to indicate that it was used in such a sense." *Mill Creek Coalition v South Branch of Mill Creek Intercounty Drainage Dist*, 210 Mich App 559, 565; 534 NW2d 168 (1995) (interpreting the Drain Code, MCL 280.122). This reasoning if applied to this context lends support to the conclusion that the parties intended the dispute resolution provision to be permissive. For instance, the parties' agreement created a two-step dispute resolution process. The first step involves submission of the dispute to "Weller or a subsequently-named third party" for resolution. The agreement then provides a right-to-appeal provision from Weller or the third party's decision. Not only is this two-step dispute resolution process unusual, it also goes against the strong public policy in favor of arbitration as a simple expeditious means of resolving disputes. *Rooyakker & Sitz, PLLC v Plante & Moran, PLLC*, 276 Mich App 146, 163; 742 NW2d 409 (2007) (citation omitted). A determination that the provision is mandatory would compel the parties to seek resolution with Weller's assistance and then appeal his "decision" if the unsuccessful party is dissatisfied with it, before recourse to court.

---

[5] Having said that, it is important to note that plaintiff has not explicitly argued that the agreement does not provide for arbitration agreement. At the trial court, plaintiff argued it was a non-mandatory arbitration agreement. On appeal, plaintiffs refer to the agreement as an "open-ended process that does not have the necessary structure of arbitration, with all the specifics and procedural aspects provided by statute."

Defendants rely primarily on this Court's decision in *Mollett v Taylor*, 197 Mich App 328; 494 NW2d 832 (1992), to argue that the word "may" in arbitration provisions should be construed as requiring arbitration. However, *Mollet* is readily distinguishable from the present case. In *Mollett*, the plaintiff, a former municipal firefighter, filed a constructive discharge lawsuit against defendant without pursuing administrative remedies available to him under the governing collective bargaining act or under the police and civil service act, MCL 38.501 *et seq*. *Id.* at 329. Section 14 of the civil service act provides in relevant part that:

> If the removing officer fails to make charges to the satisfaction of a member or members of a fire department in a city, village, or municipality, the member or members of the fire or police department *may* present the information to the civil service commission. [MCL 38.514(14)(1) (emphasis added).]

The trial court dismissed the plaintiff's claims holding that he was required to exhaust his administrative remedies under the act and the collective bargaining agreement before filing an action in the circuit court. *Mollett*, 197 Mich App at 332. On appeal, plaintiff argued that the use of the word "may" in the statute meant that he could file his claim with the civil service commission or "proceed directly to the circuit court." *Id.* at 339. However, the *Mollet* decision rested on the well-settled principle that in civil service cases a plaintiff is required to exhaust administrative remedies, whatever they may be. This is mandated by MCL 24.301,[6] and *Mollet* cited many cases that confirmed the need to exhaust administrative remedies in the context of action by a government agency. Given that by statute an aggrieved party must exhaust administrative remedies, the *Mollet* Court properly concluded that the use of "may" in MCL 38.514(14)(1) meant that that "a discharged employee may present a claim to the civil service commission or choose to do nothing at all." *Mollett*, 197 Mich App at 339.

Defendants briefly refer to out-of-state and federal cases. As the issue before us is to be determined by Michigan contract law, we are not bound by federal caselaw. *Travelers Prop Cas Co of America v Peaker Servs, Inc*, 306 Mich App 178, 188; 855 NW2d 523 (2014) (citation omitted) (stating that caselaw from sister states and federal courts are not binding but may be considered persuasive authority). Nevertheless, we have considered them and they do not lead us to a different result.

---

[6] MCL 24.301 reads in pertinent part:

> When a person has exhausted all administrative remedies available within an agency, and is aggrieved by a final decision or order in a contested case, whether such decision or order is affirmative or negative in form, the decision or order is subject to direct review by the courts as provided by law. Exhaustion of administrative remedies does not require the filing of a motion or application for rehearing or reconsideration unless the agency rules require the filing before judicial review is sought.

Several of the cases such as *Bonnot v Congress of Independent Unions, Local No, 14*, 331 F 2d 355, 359 (CA 8, 1964), *Deaton Truck Line v Local Union 612*, 314 F 2d 418, 422 (CA 5, 1962), and *Local 771 IATSE, AFL-CIO v RKO General*, 546 F 2d 1107, 1116 (CA 2, 1977) involve collective bargaining agreements. We do not find them instructive because collective bargaining agreements are specialized documents that are obtained through legally defined negotiation processes. *Alarcon v Fabricon Prods, Div of Eagle-Picher Co*, 5 Mich App 25, 33; 145 NW2d 816 (1966) (recognizing that collective bargaining agreements are unique and a class of its own). Moreover, underlying collective bargaining agreements are the duties of a union to its members. See *Goolsby v Detroit*, 419 Mich 651; 358 NW2d 856 (1984); *Republic Steel Corp v Maddox*, 379 US 650, 653; 85 S Ct 614; 13 L Ed 2d 580 (1965) (stating that the union's interest in prosecuting employees grievances "complements [its] status as exclusive bargaining representative by permitting it to participate actively in the continuing administration of the contract" and enhances its "prestige with employees"). The interpretation of collective bargaining agreements does not assist us with determining the parties' intent in the instant setting.

More generally, the cited cases, with one exception, turn on contracts that specifically define arbitration as the dispute resolution mechanism and many of these refer to statutory mechanisms or the rules of the American Arbitration Association. Others contain provisions or are subject to statutes requiring exhaustion of administrative remedies. As noted above, the contractual language in this case does not require exhaustion of administrative remedies and does not define Weller's role as that of an arbitrator.[7]

We conclude that the contract before us does not mandate arbitration and that, as the trial court concluded, plaintiffs were free to file suit. We emphasize however, that we are not setting forth a broad rule that "may" in an arbitration agreement is permissive. Rather, we are addressing the question in the context of the unique language of the subject contract.

Affirmed. As prevailing party, plaintiff may tax costs. MCR 7.219A.

/s/ Douglas B. Shapiro
/s/ Joel P. Hoekstra
/s/ Michael J. Kelly

---

[7] The one exception is *TM Delmarva Power, LLC v NCP of Virginia, LLC*, 263 Va 116,123; 557 SE2d 199 (2002), where the Virginia Supreme Court in a 4-3 decision considered a contract similar to the one before us and concluded that it provided for mandatory arbitration. We agree with the dissenting Justices in that case, who noted that "the parties were not subject to a collective bargaining agreement or any other separate agreement or clause requiring that dispute resolution mechanisms be exhausted prior to litigation. . . . The contract, as written . . . did not limit any party's access to the courts." *Id*. at 124.