*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* ELKINS TRINE, Minors.

UNPUBLISHED
February 14, 2025
11:56 AM

Nos. 371379; 371380
Branch Circuit Court
Family Division
LC No. 23-006576-NA

Before: YOUNG, P.J., and GARRETT and WALLACE, JJ.

PER CURIAM.

In this consolidated appeal,[1] respondent-father and respondent-mother appeal as of right the trial court order terminating their parental rights to the minor children under MCL 712A.19b(3)(c)(*i*) (conditions of adjudication continue to exist), MCL 712A.19b(3)(g) (failure to provide proper care and custody), and MCL 712A.19b(3)(j) (reasonable likelihood that the children will be harmed if returned to the parents). On appeal, respondent-father argues that the trial court clearly erred by finding statutory grounds for termination of his parental rights. Respondent-mother argues that the trial court failed to consider appointing one of the minor children with her own attorney because the child's wishes to return to respondents' care conflicted with the lawyer-guardian ad litem's understanding of the child's best interests. We affirm.

## I. FACTS

Respondent-father and respondent-mother were married but not living together; respondent-father was in Kentucky and had not seen the children in six months, and respondent-mother was raising them on her own in Michigan. She was homeschooling them, and they were living in a friend's camper that was in shoddy condition with no running water. In April 2023, Children's Protective Services (CPS) visited respondent-mother and the children at the camper when it received a report that respondent-mother was using methamphetamines. When the CPS worker arrived that evening, the children were awake on a deflated air mattress, and they had run

---

[1] *In re Elkins Trine, Minors*, unpublished order of the Court of Appeals, entered June 25, 2024 (Docket Nos. 371379 and 371380).

out of bottled water, which they had been using in place of running water. Respondent-mother admitted that she had consumed methamphetamines but said that she did so unknowingly or accidentally. Respondent-father and respondent-mother both had a history with CPS and with substance use; respondent-father also had a criminal history, including a sexual misconduct felony. The children were removed and placed with their maternal grandparents. Respondent-father became involved shortly thereafter and hitchhiked from Kentucky to Michigan.

The barriers to reunification that formed the bases for respondent-father's and respondent-mother's tailored treatment plans both involved housing, employment, substance use, parenting education, and mental health. However, neither respondent made substantial progress. By the time of the termination hearing, respondent-mother was "couch surfing," and respondent-father was working on making a camper livable, but it still did not have its own electricity. Neither respondent had consistently maintained employment, and they each tested positive for substances, including methamphetamines, on several occasions throughout the proceedings. Respondent-father acknowledged that he erred, but respondent-mother denied having consumed or struggled with substances. Their attendance at parenting time was inconsistent, and they both missed four scheduled appointments for psychological evaluations. Respondent-mother especially did not address her mental-health issues with paranoid schizophrenia because she did not follow up with treatments, was hospitalized for a period, and did not participate in inpatient treatment for more than a few days.

Because the conditions concerning housing, employment, substance use, parenting education, and mental health had not improved and over 182 days had passed since the initial dispositional order for respondent-father and respondent-mother, the trial court found that there were statutory grounds to terminate parental rights. The trial court also found additional grounds for termination in that the children would not have proper care in respondents' inadequate housing. The children also faced risk of harm if they were returned to such inadequate housing and potential homelessness. Furthermore, the children were severely delayed in their educational and social development; therefore, the trial court found risk of emotional and developmental harm if the children were reunified with respondents. Although the trial court heard from the lawyer-guardian ad litem (LGAL) that one of the children expressed a desire to return to respondents' care, the LGAL conveyed, and the trial court agreed, that the children's best interests would not be served by reunifying the children with respondent-father or respondent-mother.

Respondent-father and respondent-mother now appeal.

II. ANALYSIS

"To terminate parental rights, the trial court must find that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been proven by clear and convincing evidence." *In re Pederson*, 331 Mich App 445, 472; 951 NW2d 704 (2020) (quotation marks and citation omitted). "We review for clear error the trial court's decision whether grounds for termination have been proven by clear and convincing evidence." *Id*. "A finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake has been made . . . ." *Id*. (quotation marks and citation omitted). We defer "to the special ability of the trial court to judge the credibility of witnesses." *Id*. (quotation marks and citation omitted).

Because MCL 712A.17d(2) grants a trial court discretionary authority to appoint separate counsel for a child in termination proceedings, we review issues concerning MCL 712A.17d(2) for an abuse of discretion. See *Warda v Flushing City Council*, 472 Mich 326, 332; 696 NW2d 671 (2005); see also *Mollet v City of Taylor*, 197 Mich App 328, 339; 494 NW2d 832 (1992). But unpreserved issues in termination cases are reviewed for plain error affecting substantial rights. *In re VanDalen*, 293 Mich App 120, 135; 809 NW2d 412 (2011). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. (quotation marks and citation omitted). "Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *In re Utrera*, 281 Mich App 1, 9; 761 NW2d 253 (2008). The burden of persuasion with respect to prejudice is on the party asserting plain error. *In re Pederson*, 331 Mich App at 463.

## A. STATUTORY GROUNDS

The trial court did not clearly err by finding clear and convincing evidence to support terminating respondent-father's parental rights under MCL 712A.19b(3)(c)(*i*), MCL 712A.19b(3)(g), and MCL 712A.19b(3)(j).

Under MCL 712A.19b(3)(c)(*i*), a trial court may terminate parental rights if, after 182 or more days since the initial dispositional order was entered, the "conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age." Termination is appropriate when "the totality of the evidence amply supports that [respondent] had not accomplished any meaningful change in the conditions existing by the time of the adjudication." *In re Williams*, 286 Mich App 253, 272; 779 NW2d 286 (2009). Failing to resolve inadequate housing issues establishes proper grounds for termination under MCL 712A.19b(3)(c)(*i*). See *In re Trejo*, 462 Mich 341, 357-360; 612 NW2d 407 (2000). Ongoing substance-use issues—evidenced by testing positive for substances throughout proceedings—especially when accompanied by a denial of drug use, can form a proper basis for termination under MCL 712A.19b(3)(c)(*i*). See *In re Atchley*, 341 Mich App 332, 344; 990 NW2d 685 (2022); see also *In re Simpson*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 368248); slip op at 3-4. Additionally, failure to make progress with addressing mental-health issues, including not releasing medical records to allow caseworkers to track progress, can form a sufficient basis for termination under MCL 712A.19b(3)(c)(*i*). See *In re Smith*, 324 Mich App 28, 47-48; 919 NW2d 427 (2018).

Termination was proper with regard to respondent-father under MCL 712A.9b(3)(c)(*i*) because his primary barriers to reunification at the time of adjudication continued to exist by the time of the termination hearing. See *In re Williams*, 286 Mich App at 272-273. Specifically, the trial court properly found so when it stated that his issues with "substance use, housing, parenting education, lack of transportation, [and] lack of employment . . . [were] all present, in one form or another, still today . . . notwithstanding the testimony of father, who indicates he has a job that started training today, but he lives in a trailer that doesn't have its own electricity." See *id*.; *In re Trejo*, 462 Mich at 357-360. Additionally, respondent-father's issues with substance use were unresolved because he tested "positive for methamphetamine fairly recently, so that, clearly, still exists." See *In re Atchley*, 341 Mich App at 344. Finally, respondent-father did not make much progress with his mental-health treatment, especially because the caseworker was not able to

access his records and track his progress or lack thereof. See *In re Smith*, 324 Mich App at 47-48.[2]

Therefore, the trial court's findings pursuant to MCL 712A.19b(3)(c)(*i*) were not clearly erroneous. See *In re Atchley*, 341 Mich App at 344; *In re Simpson*, ___ Mich App at ___; slip op at 3-4. Because termination is proper when one statutory ground exists, we need not address the remaining statutory grounds relied upon in this case. See *In re HRC*, 286 Mich App 444, 461; 781 NW2d 105 (2009).

However, in brief, we note that termination of respondent-father's parental rights was also proper under MCL 712A.19b(3)(g) and MCL 712A.19b(3)(j). MCL 712A.19b(3)(g) provides that a trial court may terminate parental rights when "[t]he parent although in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age." Under MCL 712A.19b(3)(j), a trial court may terminate parental rights when "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if the child is returned to the home of the parent." "[T]he harm in question need not be physical; a risk of *emotional* harm can suffice." *In re Pederson*, 331 Mich App at 473 (quotation marks and citation omitted). The same evidence supporting termination under MCL 712A.19b(3)(c)(*i*) may support termination under MCL 712A.19b(3)(g) and MCL 712A.19b(3)(j). See *id*. at 472, 475. Further, this Court frequently assesses the applicability of MCL 712A.19b(3)(g) and MCL 712A.19b(3)(j) together, according to the same factors, such as the parent's history of conduct and progress toward overcoming the parent's barriers to reunification. See, e.g., *id*. at 472-475; *In re Smith*, 324 Mich App at 49-50.

"A parent's failure to participate in and benefits from a service plan is evidence that the parent will not be able to provide a child proper care and custody" and "a parent's failure to comply with the terms and conditions of his or her service plan is evidence that the child will be harmed if returned to the parent's home" pursuant to MCL 712A.19b(3)(g) and MCL 712A.19b(3)(j). *In re White*, 303 Mich App at 710-711. For example, failing to participate in parenting education, or making only minimal progress in other treatment-plan requirements indicate likely harm to children if they were reunified with noncomplying parents. See *In re Smith*, 324 Mich App at 49. Additionally, "failure to seek treatment for [substance use] or mental health issues" is evidence supporting termination. See *In re Rippy*, 330 Mich App 350, 358; 948 NW2d 131 (2019).

---

[2] Although only respondent-father challenges the trial court's findings regarding statutory grounds for termination, termination for respondent-mother under MCL 712A.19b(3)(c)(*i*) was also proper because, since her adjudication hearing, she had still not been psychologically evaluated or received consistent mental-health services; she was "couch-surfing," that is, lacked housing; and she continued to deny using substances, despite consistently testing positive for methamphetamines. See *In re Atchley*, 341 Mich App at 344; see also *In re Trejo*, 462 Mich at 357-360; *In re Smith*, 324 Mich App at 47-48. Respondent-mother in this case did not rectify her longstanding issues with housing, employment, and substance use. See *In re Williams*, 286 Mich App at 272-273.

-4-

In this case, respondent-father—as well as respondent-mother—made little-to-no progress with their service plans. They were inconsistent with parenting time; they missed four psychological-evaluation appointments and made little-to-no progress with their mental-health issues; they continued testing positive for substances; and they did not secure and maintain adequate housing or employment despite these being requirements in their treatment plans. See *In re Rippy*, 330 Mich App at 358; *In re Smith*, 324 Mich App at 49; *In re White*, 303 Mich App at 710-711. As the trial court noted, the evidence did not indicate that circumstances would change in a reasonable time, considering the age of the children. Although the trial court did not "believe that the parents would physically abuse or harm these kids," the trial court found reasonable likelihood of emotional harm because neither parent had adequate housing and they both had ongoing issues with substances and mental-health: "if you look at the mental health issues and the substance abuse issues, I believe it would be harmful to put these children back in a home that does not have running water or electricity. Or to be homeless. That would cause an emotional harm." See *In re Pederson*, 331 Mich App at 473. The court also concluded that the parents' continuing issues would be psychologically harmful to the children. In summary, considering the evidence of record, we conclude that the trial court did not clearly err by finding a basis for termination of parental rights also under MCL 712a.19b(3)(g) and MCL 712A.19b(3)(j).

## B. APPOINTING COUNSEL FOR CHILD

The trial court also did not plainly err by failing to appoint separate counsel for one of the children, whose desire to return to respondents' care somewhat differed from the LGAL's understanding and advocacy for her best interests.

"A lawyer-guardian ad litem's duty is to the child, and not the court." MCL 712A.17d(1). Under MCL 712A.17d, an LGAL has enumerated powers and duties, including "[t]o serve as the independent representative for the child's best interests, and be entitled to fully and actively participate in all aspects of the litigation and access to all relevant information regarding the child." MCL 712A.17d(1)(b). According to MCL 712A.17d(1)(i), one such set of duties and powers includes as follows:

> To make a determination regarding the child's best interests and advocate for those best interests according to the lawyer-guardian ad litem's understanding of those best interests, regardless of whether the lawyer-guardian ad litem's determination reflects the child's wishes. The child's wishes are relevant to the lawyer-guardian ad litem's determination of the child's best interests, and the lawyer-guardian ad litem shall weigh the child's wishes according to the child's competence and maturity. Consistent with the law governing attorney-client privilege, the lawyer-guardian ad litem shall inform the court of the child's best wishes and preferences.

"And MCL 712A.17d(2) provides that, when a child's interests differ from the LGAL's determination of the child's best interests, the court has discretion to appoint an attorney for the child." *Farris v McKaig*, 324 Mich App 349, 360; 920 NW2d 377 (2018). MCL 712A.17d(2) provides as follows:

> If, after discussion between the child and his or her lawyer-guardian ad litem, the lawyer-guardian determines that the child's interests as identified by the

child are inconsistent with the lawyer-guardian ad litem's determination of the child's best interests, the lawyer-guardian ad litem shall communicate the child's position to the court. If the court considers the appointment appropriate considering the child's age and maturity and the nature of the inconsistency between the child's and the lawyer-guardian ad litem's identification of the child's interests, the court may appoint an attorney for the child. An attorney appointed under this subsection serves in addition to the child's lawyer-guardian ad litem.

This provision is discretionary, in that a trial court "may" appoint a separate attorney for a child. See *Warda*, 472 Mich at 332.

When the child expressed a desire to return to respondents' care, the LGAL adequately informed the trial court of her wishes and acknowledged this difference between her wishes and the LGAL's understanding of her best interests. See MCL 712A.17d(2). The LGAL further noted to the court that the child "also expressed an excitement and happiness about the stability" that she had in her current placement. Because the LGAL complied with the statutory obligation to communicate the child's position to the trial court, the trial court had discretion whether to appoint an attorney for the child. Considering the child's young age of nine, the child did not demonstrate maturity to understand that she faced threats to her well-being if she returned to respondents' care—including their substance use, mental-health issues, and inadequate housing.

Additionally, the nature of the inconsistency among the child's own wishes and the LGAL's identification of her best interests did not appear egregious because the child did not express reasons for her desire to return that were inconsistent with the LGAL's findings about threats to her well-being. Lastly, the trial court's consideration of the children's best interests on the record at the termination hearing demonstrates that the trial court had considered the child's specific wishes but ultimately determined that termination was in her best interests. See *In re Moss*, 301 Mich App 76, 87; 836 NW2d 182 (2013).

Plus, the statute does not require that the trial court expressly consider on the record whether appointing a separate attorney is warranted. See MCL 712A.17d(2). Absent statutory or court-rule requirements, a trial court is not required to recite on the record every detail of its considerations and findings. See *In re Williams*, 333 Mich App 172, 183; 958 NW2d 629 (2020). Because judges are presumed to know the relevant law, they are also presumed to follow the law, absent evidence to the contrary. See *Auto-Owners Ins Co v Keizer-Morris, Inc*, 284 Mich App 610, 612-613; 773 NW2d 267 (2009). In this case, there is no evidence to indicate that the trial court failed to consider appointing a separate attorney for the child.

In summary, respondent-mother has failed to establish plain error affecting substantial rights occurred with regard to her claim that the trial court should have appointed a separate

attorney for one of the children who expressed a desire to return to respondents' care.  See *In re Pederson*, 331 Mich App at 463; *In re VanDalen*, 293 Mich App at 135.[3]

 Affirmed.


       /s/ Adrienne N. Young
       /s/ Kristina Robinson Garrett
       /s/ Randy J. Wallace

---

[3] Neither respondent-father nor respondent-mother raise issues regarding the trial court's general findings that termination was in the children's best interests.  However, having reviewed the record, we nevertheless conclude that the trial court did not err in finding, by a preponderance of the evidence, that termination was in the children's best interests.  See *In re Gonzales/Martinez*, 310 Mich App 426, 434; 871 NW2d 868 (2015); see also *In re White*, 303 Mich App 701, 713-714; 846 NW2d 61 (2014).